96        CAHN *et al. v.* MICH. CENT. R. R. Co.        [Sept. T.

Statement of the case.

# AARON CAHN *et al.*

*v.*

# THE MICHIGAN CENTRAL RAILROAD COMPANY.

1. CARRIERS—*when liability ceases.* It is the duty of a carrier by railroad, when the goods are conveyed to its depot, to unload and place them in a convenient place for delivery, and, if the consignee is then ready to receive them, to deliver them to him, but if he is not, the carrier must then safely store them under the charge of competent and careful servants, ready to be delivered when called for by those entitled to receive them. When this is done, the carrier's duty is discharged, and his liability ceases.

2. SAME—*custom, as affecting place of delivery.* The *prima facie* obligation of a carrier with respect to delivery may be affected by a well established and generally well known custom and usage; but to have that effect, it must be so uniformly acquiesced in, by length of time, that the jury will feel themselves constrained to say that it entered into the minds of the parties, and made a part of the contract.

3. Where a railway company delivered goods arriving at its depot to a carter, to be delivered by him only when the consignee did not furnish his own teams, or give directions to the contrary, and the company was not interested in the cartage of the goods: *Held*, that this did not establish a custom to deliver at the consignee's place of business.

4. SAME—*when railway company must deliver at consignee's place of business.* If a railway company, receiving goods for transportation over its road, exacts the payment of cartage in advance of shipping, this will constitute an express contract to deliver at the consignee's place of business, and its liability will not cease until this is done.

APPEAL from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

This was an action on the case, by Aaron Cahn, Louis Wampold, Bernard Cahn, Charles Cahn and David Wallach, against the Michigan Central Railroad Company, to recover damages for the loss of goods shipped. The opinion of the court states the necessary facts.

Messrs. ROSENTHAL & PENCE, for the appellants.

Messrs. WALKER, DEXTER & SMITH, for the appellee.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

It is insisted that the liability of appellee as a common carrier had not terminated, in the present case, when the goods were destroyed, for two reasons: first, because no opportunity was afforded appellants to receive or examine their goods after their arrival at the Chicago depot, and second, because it was, by custom or usage, the duty of appellee to deliver the goods at appellants' place of business, and not at its warehouse.

In support of the first position, it is argued that the facts in the present case are different from those in the case of *The Merchants' Dispatch Transportation Company* v. *Hallock*, 64 Ill. 284, and that the rule there announced, consequently, does not apply.

We are unable to concur in this view of the case. There is, it is true, some difference in the facts between the two cases, but the difference is unimportant, and does not affect the principle of law involved. The goods were, in both cases, shipped by appellee's road. They arrived at the Chicago depot at or near the same time—about half past seven o'clock, on Saturday evening, October 7, 1871—and they were all destroyed by the memorable fire, commencing the following evening, which consumed the greater portion of the business part of the city. In both cases, there was urgent need for the immediate use of the cars in which the goods were shipped. In the present case, the goods were unloaded the same evening that they arrived, directly into appellee's warehouse, and, in the other case, they were unloaded into the warehouse of the transportation company, on the following morning. It is shown, in the present case, that, on account of the way in which appellee's tracks are laid, and its freight business is conducted at this depot, it is impossible for consignees to receive goods which it conveys, until after they have been unloaded from the car into the warehouse. In Hallock's case, it did not appear but that goods arriving

during business hours might be received directly from the car, or from an open platform accessible to the public. It is not shown that a delivery from appellee's warehouse is necessarily, as its business is conducted, less expeditious, or convenient to consignees, than a delivery of the same goods would be if made from the car or an open platform. In no event could a delivery at such a depot be instantaneous with the arrival of the goods, nor could consignees be allowed, before goods are separated, to intermeddle with the contents of cars, or indiscriminate masses of freight unloaded upon a platform. The interests of both carrier and consignees would, obviously, require, especially at depots where such vast quantities of goods are being constantly received for consignees as at that of appellee, at Chicago, that the servants of the carrier should be free from outside annoyance or interference in the arrangement and delivery of the various consignments, as they are received at the depot. It is the carrier's duty, when the goods are conveyed to the depot, to unload and place them in a convenient place for delivery, and, if the consignee is then ready to receive them, to deliver them to him, but if he is not, the carrier must then safely store them, under the charge of competent and careful servants, ready to be delivered when called for by those entitled to receive them. When this is done, the carrier's duty is discharged. Whether the goods are placed, for the purpose of delivery, on a platform, open and accessible to the public, or in a warehouse, constructed with proper conveniences and facilities for a speedy delivery, and equally accessible to the public, can make no difference, for, if the consignee is present at the time, and receives his goods, no question as to the intermediate rights and duties of warehousemen can arise, for none will have attached; and if he is not then present to receive, or if, for any reason, he chooses to permit them to remain, the custody then becomes that of a warehouseman, and not that of a carrier. We are unable to perceive how, in any view, the rights of the parties can in the least be

changed or affected by the act of unloading the car directly into the warehouse, instead of upon an open platform.

We are perfectly well aware that the rule heretofore laid down, and thus far adhered to by this court, upon this subject, is not in harmony with the views of the courts in many of the other States, and as contended for by some respectable law writers. As was shown in Hallock's case, it was, however, adopted many years since, after an examination of many authorities and mature consideration by the court, and we do not conceive that it would be wise or prudent to now change it.

The facts in this case, as we understand them, bring the case within the rule to which we have alluded, and they are not different in principle, as we have attempted to show, from those in Hallock's case.

The principal question involved in the second position contended for is one of fact. It is undoubtedly true that the *prima facie* obligation of a carrier, with regard to delivery, may be affected by a well established and generally well known custom and usage; but it must, to have that effect, be so uniformly acquiesced in, by length of time, that the jury will feel themselves constrained to say that it entered into the minds of the parties, and made a part of the contract. *Dixon* v. *Dunham*, 14 Ill. 324; Angell on Carriers, sec. 301; *Turner* v. *Dawson*, 50 Ill. 85.

If we were to consider the evidence on behalf of appellants alone, it might be that we should feel constrained to say that the usage was, in the case before us, sufficiently proved; but the evidence of appellee shows that it was in no manner interested in the cartage of the goods; that this was a private arrangement of one McMurtry, and that goods were delivered to him only in cases where consignees did not furnish their own teams, or give directions to the contrary.

It seems to us clear that appellee's servants never regarded appellee as bound to deliver goods in this way, and that they did nothing from which appellants were authorized to infer

that they might not use their own conveyances, or employ others than McMurtry, to cart their goods.

If appellee had exacted the payment of cartage in advance of shipping, as was done in the case of *Hyde and another* v. *The Navigation Company from the Trent to the Mersey,* 5 Term R. 390, referred to by appellants, it would undoubtedly be liable, for this would have constituted an express contract to deliver their goods at their place of business; but this was not the fact. If we resort to the bill of lading as evidence, we there find that the undertaking was to ship to Chicago depot only, and, aside from this, there is no evidence of an express contract. If a custom existed which was obligatory, it was binding upon both parties—the consignee as well as the carrier.

It is impossible, from all the evidence, to say that appellants were not at liberty to have done their own carting from appellee's depot, or to have employed whomsoever they chose to do it.

We perceive no error in the record for which the judgment should be reversed, and it is therefore affirmed.

*Judgment affirmed.*