St. Louis Hay & Grain Company, Appellant, v. Chicago & Alton Railroad Company, Appellee.

1. COMMON CARRIERS—*when obligations become those of warehouseman.* When a common carrier places freight cars on its team tracks and notifies the consignees of their arrival and then holds them for inspection and sale by the consignees while waiting the further orders of the consignor, the obligations of the common carrier have been reduced to and become those of a warehouseman.

2. RAILROADS—*when not liable for extortion as to freight charges.* Held, under the evidence in this case, that the defendant company was not liable for a penalty of treble the amount of freight charged as provided in sections 124, 125 and 129 of the Railroad Act.

*Assumpsit.* Appeal from the City Court of East St. Louis; the Hon. MORTIMER MILLARD, Judge, presiding. Heard in this court at the February term, 1909. Affirmed. Opinion filed November 13, 1909.

L. O. WHITNEL, for appellant.

KRAMER, KRAMER & CAMPBELL, for appellee; WINSTON, PAYNE, STRAWN & SHAW, of counsel.

MR. JUSTICE DUNCAN delivered the opinion of the court.

This is an action of *assumpsit* on the statute, chapter 114, sections 124, 125 and 129, entitled ''Extortion and Unjust Discrimination,'' brought by appellant against appellee. The plaintiff sues to recover the penalty of treble the amount of freight charges, alleged to be unjustly collected by the defendant as common carrier of the plaintiff, on two hundred cars of hay, shipped to East St. Louis by consignors in Illinois and elsewhere, to consignees in East St. Louis, from the latter of whom the appellant purchased said cars of hay on the tracks of defendant at East St. Louis. No question arises on the pleadings. The trial was had before the city court of said city without a jury by agreement, September 10, 1908, resulting in a judgment in favor of defendant against the plaintiff for costs.

From 1903 to 1907, the time involved in this suit, East St. Louis was one of the principal hay-markets of the country. A great deal of hay from Missouri, Illinois and Indiana was shipped to East St. Louis for consumption there; and, also, for shipment to other points. At this time in question the appellant was engaged in the commission business in said city and dealt largely in hay, most of which it purchased on the tracks of railroads running into the city. During this time the said two hundred cars of hay were hauled by the defendant on its road in carloads onto its team tracks in its Front street yards located near the river in said city. The hay was first brought by trains of appellee to its Venice yards located outside of East St. Louis about three miles north of its Front street yards, where the trains were broken up and the cars brought thence to Front street yards by switch-engines and placed on what is known as the team tracks if they contained room, or if the team tracks were full, they were placed on the hold tracks of the company. In ac-

386 APPELLATE COURTS OF ILLINOIS.

St. Louis Hay & Grain Co. v. C. & A. R. R. Co., 151 Ill. App. 384.

cordance with the custom of this market, the cars were then manifested by appellee posting up notices in its freight office giving the number of the cars, the contents and the name of the consignees. The consignees also received notice of the date of the arrival of the cars and the freight charges thereon. By custom the consignees then assembled the buyers, inspected the hay, and sold the two hundred cars of hay to appellant on said tracks. The appellant then, through the original consignees, as its agent, gave notice to appellee of reconsignment to itself at its warehouses in said city, one of which, the Union, is located on the tracks of the East St. Louis Connecting Railway Company, sometimes known as Wiggins Ferry. The other warehouse, the National, was located on the tracks of the Southern Railway Company, sometimes known as V. & C. Belt. Neither one of these warehouses could be reached by the appellee by any of its tracks, nor by any other track that it was authorized to use. To reach the Union warehouse, a car would have to be moved from Front street yards about two and one-half miles north to the connecting road, East St. Louis Connecting Railway, for delivery by that road. To reach the National warehouse, the car would have to be moved from Front street yards three miles north to appellee's Venice yards and delivered to the V. & C. Belt, for delivery by that line to the warehouse. It does not appear from the evidence what part of these two hundred cars were transported to each of these warehouses. After the hay was sold on the yard tracks, no extra charge was made by the appellee to the appellant or to any other buyer or consignee of hay, for delivering the cars onto the team tracks for convenient carting away of the hay by the purchaser or consignee, when such was desired and made known to appellee. All sales, however, were made on the team tracks unless they were full; and, when the cars were on the team tracks, no physical movements of the cars were usually required for unloading there. The unjust discrimination and extor-

tion that appellant complains of is the practice of the appellee of charging two dollars a car for each of the said cars delivered to said connecting railroads, while on the other hand it makes no additional charge for delivering cars of hay on these team tracks.

There are many errors assigned on this record by the appellant; but its real contention is set forth in the following language of its counsel, quoted from appellant's argument, viz.: "There is, as we view it, but one question involved in this case: * * * The court seemed to be of the opinion that after the cars were placed on the tracks in the yards they remained in the possession of the railroad company as warehouseman and not as carrier. We contend that there was but one shipment of each car and there was but one delivery of each shipment. If we are right in this contention then the judgment of the court below was wrong."

The evidence in this record clearly shows that there was no intention of the defendant railroad company to unload these cars of hay and store them in any of its freight-houses in any event. It was not expected or desired by any of the consignees or their assignees to have the hay so stored. Whether the delivery to the appellant was to be made to it on the team tracks or at its warehouses, the hay remained in the cars of appellee until they were unloaded by the appellant. None of these two hundred cars were unloaded by the appellant at the team tracks; but all of them by its direction, were hauled to the connecting roads aforesaid for delivery by those roads to appellant at its warehouses. We are not able to understand how the question of whether or not an actual manual delivery to either the consignees or to this appellant at the team tracks of these shipments, such as is spoken of by appellant, is to be the sole question upon which this controversy is to be settled. Suppose that instead of an order from the appellant to the appellee to have these cars delivered or shipped to its warehouses after the purchase of the cars of hay, the order of appellant had

been to deliver this hay to it at Alton, Illinois, would appellant contend that no extra charge could be made by appellee for this service? Would it make any difference in the settling of this question that Alton was the place that the appellant usually or customarily had these cars delivered to it by appellee? Whether or not the appellee was holding these cars of hay as a common carrier or as warehouseman at the time it received orders from the appellant to reship or deliver this hay to it at its warehouses, may be a factor in settling this case, but not necessarily the controlling one. We think, however, under the authorities that when the appellee placed these cars on its team tracks or other tracks in its Front street yards, and notified the consignees of their arrival and then held them for inspection and sale by the consignees, and while awaiting further orders of appellant, that the appellee was acting in the capacity of a warehouseman and that its original duty as a common carrier had ceased. It had then done all that was required of it as a common carrier by its first contract, as there was no other place of delivery specified in its contract. As warehouseman, if the hay was to be unloaded from its cars and carted away while on the yard tracks, the consignee or assignee would still have the right to demand of the appellee that it place the cars so they could be reached by teams for the purpose of unloading. But this would not make them still a common carrier. If they had been stored in a freight house and appellee was holding them there as warehouseman, it would be its duty to have them in an accessible place for loading and carting away; and if they were not in such a place, the duty of appellee as warehouseman would be to so place them that they would be accessible for delivery. Before these cars of hay were sold to the appellant by the consignees, the railroad company had no sort of notice that they were to be sold to appellant. The railroad company could not foresee that any sale of this hay would be made at all. If sale should take place and if

the railroad could reasonably expect a sale, the buyer could not be known until sale was made. The buyer after sale, whether appellant or some other person, might want it reconsigned to New Orleans or to any other place in this country. This reconsignment might be to some other city on appellee's line or to some city off its line, or there might be no reconsignment or re-shipment any where and the hay carted away by the consignee or his assignee. For the accommodation of the hay market people, the railroad allowed its team tracks and hold tracks, to be the market place and its cars the market house for this hay. We can see no difference in the relation of the parties at the time these sales took place, than if the sales had taken place in appellee's freight houses after the articles had been unloaded by the carrier and stored for delivery. In either case we would regard the appellee as a warehouseman.

In the case of Gregg v. I. C. R. R. Co., 147 Ill. 550, our Supreme Court said: "The law is well settled in this State that the liability of a railroad company, as a common carrier of freight, ceases upon the unloading of the goods from the car at the place of destination, and placing them in a safe and secure warehouse, or where the carrier is not required in the usual course of business, or expected, to remove the freight from the car, as in the case of grain in the bulk, coal, lumber and the like, by delivering the car in a safe and convenient position for unloading, at the elevator, warehouse or other place designated by the contract or required in the usual course of business, or if no place of delivery is thus designated or required, on its side track, in the usual and customary place for unloading by consignees. * * * In all such cases the question to be determined is, whether anything remains to be done by the carrier in completion of its contract to safely carry and deliver the goods at the place of destination. If there is, its liability as carrier continues; if there is not, and the goods remain in the possession of the car-

390     APPELLATE COURTS OF ILLINOIS.

St. Louis Hay & Grain Co. v. C. & A. R. R. Co., 151 Ill. App. 384.

rier, its liability in respect thereof, when not varied by contract or usage, is as warehouseman, only." See also on this point, Richards v. Mich. S., etc., R. R. Co., 20 Ill. 405; Vincent v. C. & A. R. R. Co., 49 Ill. 33; M. D. T. Co. v. Hallock, 64 Ill. 286; Cahn v. Mich. Cent. R. R. Co., 71 Ill. 96; I. C. R. R. Co. v. Carter, 165 Ill. 570; Schumacher v. C. & N. W. Ry. Co., 207 Ill. 206, and same case in 108 Ill. App. 520; Gratiot St. Warehouse v. Railroad Co., 221 Ill. 418.

In M. D. T. Co. v. Hallock, 64 Ill. 286, quoting 49 Ill. 38, the court said, "The rule of the common law requiring common carriers by land to deliver to the consignee, has been so far relaxed in regard to railways, from necessity, as in most cases to substitute in place of personal delivery, a delivery at the warehouses or depots provided by the company for the storage of goods."

In the case of Schumacher v. C. & N. W. Ry. Co., 207 Ill. at page 206, the doctrine of railroads' liability is thus discussed: "Railroads, as to freights committed to its charge, during the period of transport and until they are delivered, bear two well recognized relations. While in transit, and for a reasonable time after reaching the point of destination, they owe the duties and bear the relation of common carriers; and when the car containing the freight is delivered to the consignee upon his own track or at a place selected by him for unloading, if he have one, or to the consignee upon the company's usual and customary track for the discharge of freight, with reasonable and proper opportunity to the consignee to take the same, or when placed in the warehouse of such company or the warehouse of another selected by him, in any and all such cases such companies then bear to such freight the relation of warehousemen."

In Cyc., vol. 6, page 454, it is said: "So, if by the shipper's orders, the goods are stopped *in transitu*, and they are held for the shipper, the carrier while so holding is liable as a warehouseman only." In the case

at bar the cars of hay were held in appellee's yards for inspection and sale by the consignees, and the consignees availed themselves of this privilege. We think under the law the appellee was holding these cars of hay as warehouseman at the time it received the order of the appellant to deliver them to its warehouses via these connecting roads.

But whether the cars of hay in question be regarded as in a warehouse or as *in transitu,* at the time of the direction of appellant to deliver them to its warehouses, by way of these connecting roads, we think that the delivery to these warehouses was properly held by the lower court as a new consignment or reshipment for which the appellee could make an extra reasonable charge. It is a well-recognized principle of law that the consignor or consignee under certain circumstances may divert the shipment of a car of freight *in transitu* and have its destination entirely changed by paying the extra charge of freight, if any be due, for a longer haul. If the original shipments had been directed by the consignors to the appellant's warehouses by way of these connecting roads, the delivery evidently would have been made to these connecting roads in the first instance at the Brooklyn and Venice yards of the appellee, thereby saving the double haul between these yards and the front street yards, and these extra charges of two dollars per car would not have arisen. It appears from the evidence that the Venice yards of appellee, where one of these connecting lines had to be reached by appellee, are not within the limits of East St. Louis. Neither one of the warehouses of appellant could be reached by appellee's road or by any road or switch that it was using or had the right to use. A railroad corporation will only be compelled to deliver grain in the particular warehouse or elevator to which it is consigned when such warehouse or elevator is upon the line of its road. Hoyt v. C. B. & Q. R. R. Co., 93 Ill. 601.

392    APPELLATE COURTS OF ILLINOIS.

St. Louis Hay & Grain Co. v. C. & A. R. R. Co., 151 Ill. App. 384.

This consignment of these cars of hay to appellant's warehouses entailed all the routine and expenses of an original shipment and also the further expense of *per diem* charges for the cars of other railroad companies while on the line of these connecting roads, as well as loss of service of its own cars that contained the hay while in this new service; and, while the matter of expense is not necessarily a deciding factor in this case, we think these reshipments were new services for which the appellee had a right to make a reasonable charge. The lower court so found and also found that the charges made by appellee were reasonable; and we think the evidence in this record sustains the finding and judgment of the lower court. We are unable to agree with the appellant that the contract of the appellee for the original shipment, bound it to make this delivery of the hay in question to appellant's warehouses or to the connecting roads. We recognize the principle that custom has much to do with the duty of a carrier as to the delivery of freight. If a carrier habitually collects money for the delivery of goods to the merchant's store, by this custom the duty of the carrier to deliver at the store might be established and its duty as a carrier be continued until the goods were delivered at the store. But if a carrier habitually carries freight from East St. Louis to Venice or to Alton and sometimes charges and sometimes makes it a gratuity, we do not see how the law could require it to continue the gratuity because it had done so customarily provided every one is treated alike.

We have examined all the errors assigned by appellant, on special findings of fact and of law, etc., and find nothing therein seriously conflicting with the judgment of the lower court. The judgment of the lower court is, therefore, affirmed.

*Affirmed.*