R. Deatwyler, Trading as R. Deatwyler & Company, Defendant in Error, v. Oregon Railroad & Navigation Company, Plaintiff in Error.

### Gen. No. 17,542.

1. CARRIERS—*when liability of initial carrier terminates.* In an action for damages for delay and injury to a car load of fruit which, after the arrival in the "hold" yards and before reaching the "delivery" yards of a connecting carrier at its original point of destination, was ordered reconsigned to another city by the consignee, *held*, that the shipment had arrived at its original destination before being diverted and that the liability of the initial carrier under its contract then terminated.

2. CARRIERS—*reconsignment of freight after arrival at destination.* A reconsignment of freight which is not made during the original transit, but after it has arrived at the original point of destination, is a new contract of carriage after the original contract has been completed, and a connecting carrier has then no implied authority to make a new contract in behalf of the initial carrier.

Error to the Municipal Court of Chicago; the HON. FREEMAN K. BLAKE, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1911. Reversed and remanded. Opinion filed January 23, 1913.

**Statement by the Court.** Defendant in error, hereinafter called plaintiff, commenced an action of the fourth class in the Municipal Court of Chicago against plaintiff in error, hereinafter called defendant, to recover damages to the amount of $627.30, by reason of the failure (as alleged in plaintiff's amended statement of claim) of the defendant to exercise the necessary care to preserve certain prunes, while the same were in its

598    APPELLATE COURTS OF ILLINOIS.

R. Deatwyler & Co. v. Ore. Railroad & Nav. Co., 176 Ill. App. 597.

possession and control, and by reason of its unreasonable delay in the transit thereof. The case was tried before a jury and, at the conclusion of all the evidence, the court directed the jury to find the defendant guilty as alleged in plaintiff's statement of claim, and to assess plaintiff's damages at the sum of $480.06, to the giving of which instruction defendant excepted. The jury returned a verdict accordingly and the court entered judgment against the defendant for said amount and costs. Defendant seeks by this writ of error to reverse the judgment.

The facts are substantially as follows: On August 22, 1907, a refrigerator car was loaded with 945 crates of fresh prunes at Blalock Siding, Washington. The prunes were in a greenish state and in good shipping condition, and the car was iced to its full capacity. The defendant issued its bill of lading to J. W. Selover, the consignor, in which it acknowledged receipt of said prunes on said date in apparent good order, and in which it appeared that the consignee was M. Fry & Co., that the car number was 99138, that its destination was "Chicago, Ill.," and that it was to be shipped thereto via the line of the defendant, as initial carrier, and by the Northern Pacific and Chicago & Northwestern Railroads, as connecting carriers. The car arrived in Chicago on September 2nd, and during the forenoon of that day Martin Fry (engaged in business as a fruit broker, under the name of M. Fry & Co., the consignee in said bill of lading) was notified by telephone by an agent of the Chicago & Northwestern Railroad that said car of prunes had arrived and was on that company's tracks at Grand Avenue. Shortly after receiving this notification, Fry telephoned the same agent and told him to "divert" said car "to M. Fry & Co., Philadelphia, Pa., to notify R. Deatwyler & Co., by the B. & O. Railroad," to which the agent replied, "All right." Fry immediately sent a confirmation in writing to said agent by a messenger. The order was written on a printed form, dated September 2, 1907,

headed "Diversion Order," and was addressed to "A. D. Oyer, agent C. & N. W. R. R." The car referred to was described as "Car No. 99138. Initial N. P. From Oregon via St. Paul. Now due. Consigned to M. Fry & Co." The directions were: "Please *reconsign* to Philadelphia, Pa. to M. Fry & Co. Notify R. Deatwyler & Co. Route via B. & O. Keep iced. Protect through rate of ——. Charges. We pay freight. Follow. Allow inspection. Charges guaranteed." The order was signed "M. Fry & Co., per M. Fry." The witness Fry, called on behalf of plaintiff, testified that the signature to said diversion order was his signature, that he did not personally see the car of prunes in question, that it was not examined before it was reconsigned, and that he was receiving cars in the Grand Avenue yard "practically every day;" that it was a "hold yard;" that the Chicago & Northwestern Railroad "were receiving a great deal of deciduous fruit at that time, and these cars were always sent to the Grand avenue yards for North Western business, and held there until they got instructions either to divert the car or send it down to the auction room;" that "there were daily sales held at the auction, and also there were daily diversions, but they held them there;" that the Grand Avenue yard "was not a delivery yard;" that, prior to the transaction in question with said agent of the Chicago & Northwestern Railroad, he had had many previous dealings. with said agent in "diverting cars further east from this same yard." The original bill of lading was indorsed by Fry as follows: "Deliver R. Deatwyler & Co., M. Fry & Co."

It was further shown by the evidence offered by plaintiff that the car arrived in Philadelphia on Saturday, September 7th, too late for the market on that day; that sixteen days had elapsed since it had been received by the defendant for transit; that the contents of the car were first examined on the morning of September 9th, and it was found that the prunes

600      APPELLATE COURTS OF ILLINOIS.

R. Deatwyler & Co. v. Ore. Railroad & Nav. Co., 176 Ill. App. 597.

were in a very ripe condition and some decayed; that on the same day they were sold at auction for the sum of $1,262.70, which was the fair market value of the same in their then condition, and that the usual and customary time of transit of a car of prunes from Blalock Siding, Wash., to Philadelphia, Pa., over the railroads mentioned was eleven or twelve days. Plaintiff, by deposition taken August 8, 1910, testified that he paid the freight on said car of prunes on its arrival at Philadelphia and that the fair market value of Washington prunes, in good marketable condition, in Philadelphia on September 2 or 3, 1907, was two dollars per crate, or the sum of $1,890 for 945 crates. The difference between this sum of $1,890 and the sum of $1,262.70, or $627.30, constituted plaintiff's claim on the trial. No further evidence was offered by plaintiff to substantiate the claim of unreasonable delay in transit and negligence in preserving the prunes, or where said delay or negligence occurred, whether prior to the car reaching Chicago, or subsequently thereto. The defendant by its attorneys, at the conclusion of plaintiff's evidence, moved for a directed verdict in its favor, which motion was denied.

The only evidence introduced by the defendant was for the purpose of impeaching the testimony of plaintiff as to damages, and was to the effect that on November 19, 1907, plaintiff made written claim against the Baltimore & Ohio Railroad Company for damages "in consequence of the delay and the market on Italian plums having declined fifty cents per crate," $472.50, and for certain broken crates, in the total sum of $480.06, which claim was not paid. The defendant at the close of all the evidence renewed its motion for a directed verdict in its favor, which motion was denied, and the court directed the jury to bring in a verdict in favor of plaintiff for $480.06.

Brode B. Davis, for plaintiff in error; John M. Rankin and Edmund P. Kelly, of counsel.

Charles A. Butler, for defendant in error.

Mr. Presiding Justice Gridley delivered the opinion of the court.

It is urged by counsel for defendant that, inasmuch as the destination of the car as mentioned in the bill of lading was Chicago, Illinois, and no evidence was introduced showing any damage to the prunes prior to its arrival in that city, no recovery in any amount can be had of the defendant. Counsel argues that while by virtue of the so-called Carmack amendment (34 U. S. Statutes at Large 584, 595) the defendant, as the initial carrier, was liable for any loss or damage to the prunes occasioned by its negligence or the negligence of the connecting carriers prior to the arrival of the car in question at the destination named in the bill of lading, viz.: Chicago, that liability terminated when the car arrived at said destination and notice of its arrival had been given to the consignee, and that when the consignee in this case, Fry, *after* the arrival of said car in Chicago, directed the agent of the Chicago & Northwestern Railroad to *reconsign* said car to Philadelphia, a new contract of carriage was made between said consignee, Fry, and the Chicago & Northwestern Railroad, and that, unless it be shown that the damage to said prunes occurred prior to the arrival of the car in Chicago, plaintiff cannot recover. To this argument counsel for plaintiff replies that Fry, as the consignee and owner of the prunes, had the right to "divert" the car at any time *during the original transit of the car,* such right being vested in him by virtue of the original contract of carriage, and that when Fry signed and delivered said "diversion order" the original contract of carriage from Blalock Siding to Chicago had not terminated, for the reason that the car was then on the "hold track" and not the "team or delivery track" of the Northwestern Railroad.

We are of the opinion that the trial court erred in directing a verdict in favor of plaintiff. We think that under the facts of this case the car in question had arrived at its original destination, Chicago, named in the original contract of carriage, before Fry, as consignee, ordered the car to be shipped to Philadelphia. St. Louis Hay & Grain Co. v. Chicago & A. R. Co., 151 Ill. App. 384; Gratiot St. Warehouse Co. v. St. Louis, A. & T. H. R. Co., 221 Ill. 418; McCabe v. Atchison, T. & S. F. R. Co., 154 Ill. App. 380; Weyl v. Southern Pac. Co., 156 Ill. App. 493. By virtue of said "diversion order" a new contract of carriage was entered into between Fry and the Northwestern Railroad. "The owner cannot * * * change the destination and require delivery somewhere else, except upon the basis of a new contract, after the carrier has completed his undertaking and carried the goods to the destination first agreed upon." 2 Hutchinson on Carriers (3rd Ed.) sec. 660; Melbourne v. Louisville & N. R. Co., 88 Ala. 443. And we do not think that under the facts of this case the new contract can be construed as a contract entered into between the owner of the prunes, Fry, and the defendant,—the Northwestern Railroad acting as the authorized agent of defendant to make such new contract in its behalf. In Sheehy v. Wabash R. Co., 169 Mich. 604, plaintiff shipped household goods from St. Louis, Mo., to Flint, Mich., by virtue of a contract of carriage made with the Wabash Railroad, over that railroad as initial carrier and the Pere Marquette Railroad, as connecting carrier. The car containing the goods went astray and before it arrived at Flint plaintiff left there and made his home in Detroit. When the goods arrived at Flint the Pere Marquette Railroad notified plaintiff of their arrival and he had them *reconsigned* to Detroit. They arrived there in bad condition and some of the goods were missing. It was held that no recovery could be had against the Wabash Railroad unless it be shown that the goods were damaged before they reached

Flint, and that there was nothing in the testimony that would charge defendant after that time.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*