CHICAGO—FIRST DISTRICT—APRIL, 1915.    239

Trott v. The Baltimore & Ohio R. Co. et al., 192 Ill. App. 239.

Charles H. Trott, Plaintiff in Error, v. The Baltimore
& Ohio Railroad Company and The Baltimore &
Ohio Southwestern Railroad Company, Defend-
ants in Error.

## Gen. No. 20,324.

1. CARRIERS, § 186*—*when reshipment does not affect continuous passage.* Where perishable goods, shipped in a car over connecting railway lines, are reconsigned by the shipper, while in the possession of the carrier at their original destination, the shipment is one continuous passage, and each carrier beginning with the initial carrier is presumed to have received the shipment in good order, and the last carrier is prima facie negligent, in the absence of evidence of the place where the goods were damaged in transit, and the burden is upon it to prove that it provided all suitable means of transportation and exercised that degree of care which the nature of the case required.

2. CARRIERS, § 199*—*when presumption against final carrier rebutted.* Where the final carrier proves that it transported the goods in transit only a short distance and was in possession of them only a short time, and no evidence of its negligence is introduced, the presumption of its liability is rebutted.

3. CARRIERS, § 123*—*what insufficient to disprove negligent icing.* Where it appears that the final carrier is not negligent, the next preceding carrier is prima facie negligent where perishable goods are damaged in transit and evidence by this carrier that the car was iced and that there was no delay, introducing no evidence of the temperature of the car or that any inspection was made, does not sufficiently prove that the defendants exercised that degree of care which the nature of the goods required.

Error to the Municipal Court of Chicago; the Hon. JOHN J. ROONEY, Judge, presiding. Heard in this court at the October term, 1914. Reversed and remanded. Opinion filed April 13, 1915. Rehearing denied April 27, 1915.

Statement by the Court. This action was commenced on March 7, 1912, against The Baltimore & Ohio Railroad Company, hereinafter referred to as the

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

240    Appellate Courts of Illinois.

Trott v. The Baltimore & Ohio R. Co. et al., 192 Ill. App. 239.

B. & O. Co., to recover the sum of $585 for damage to 585 crates of cucumbers, contained in car "F. G. E., 16269."

In his original statement of claim plaintiff alleged that the cucumbers were shipped by him from Corpus Christi, Texas, on June 7, 1909; that they were consigned to him at St. Louis, Missouri, and were subsequently reconsigned to William Fisher & Sons, at Columbus, Ohio; and that at the time of shipment the cucumbers were in first-class merchantable condition, but when found in the possession of the B. & O. Co., "final carrier," on June 14, 1909, at Columbus, Ohio, they were in a bad and unmerchantable condition and were rejected by the consignees. In its affidavit of merits the B. & O. Co. alleged: (1) That it was not negligent in the handling of said cucumbers; (2) that if the same were in a bad and unmerchantable condition upon arrival at Columbus, Ohio, that condition was due to inherent defects in and from the nature of the cucumbers; and (3) that it has no knowledge as to whether or not the cucumbers were in first-class condition at time of shipment and demands strict proof thereof. The B. & O. Co. also filed a claim of set-off, verified by affidavit, in the sum of $140.15 "for balance of freight charges upon said car, F. G. E. 16269, containing said shipment of cucumbers, from Corpus Christi, Texas, consigned to C. H. Trott, St. Louis, Missouri, and diverted to William Fisher & Sons, Columbus, Ohio, by direction of the plaintiff."

On October 2, 1912, on motion of plaintiff, all records, papers and proceedings were amended by making The Baltimore & Ohio Southwestern Railroad Company, hereinafter called the Southwestern R. Co., a co-defendant, and subsequently plaintiff filed an amended statement of claim in which he made substantially the same allegations as in his original statement of claim, except that it was stated that when the cucumbers were

found in the possession "of the defendants, final carriers," they were in a bad and unmerchantable condition, etc. It was ordered that the affidavit of merits of the B. & O. Co., previously filed, stand as its affidavit to plaintiff's amended statement, and the Southwestern R. Co. filed an affidavit of merits, in which it made substantially the same allegations as made in the affidavit of the B. & O. Co.

On January 28, 1914, after a hearing before the court without a jury, the court found the issues against the plaintiff as to his claim, and also found the issues against the defendant, B. & O. Co., as to its claim of set-off, and, after overruling plaintiff's motion for a new trial, the court entered judgment against plaintiff for costs, which judgment plaintiff by this writ of error seeks to reverse.

HARRY S. DITCHBURNE, for plaintiff in error.

CALHOUN, LYFORD & SHEEAN, for defendants in error.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

It appears from the evidence that plaintiff, on June 7, 1909, at Corpus Christi, Texas, delivered merchantable cucumbers, fresh, green and in good condition, to the St. Louis, Brownsville & Mexico Railroad Company, as initial carrier, for transportation to St. Louis, Missouri; that they were properly packed and crated in 585 crates and were properly loaded in car "F. G. E. 16269," and were consigned by plaintiff to himself at St. Louis; that the car arrived at St. Louis on June 11, 1909, over the road of the Missouri, Kansas & Texas Railway Company, and was placed on a "team track"; that thereafter plaintiff reconsigned or diverted the cucumbers contained in the car to William Fisher & Sons, Columbus, Ohio, by order given said

last mentioned railway company, which order was accepted; that after passing over the line of railroad known as the "Terminal Railroad" the car was delivered to the defendant, Southwestern R. Co., at East St. Louis, Illinois, on the morning of June 13, 1909, at 10:25 o'clock, and that an agent of said defendant thereupon "signed the interchange furnished by the Terminal Railroad" and gave that company said defendant's "clear receipt" for the car; that there were "M. K. & T." seals on both sides of the car when it was "checked in" at East St. Louis and when placed in the train for Columbus, and that the car was not opened by said defendant at East St. Louis; that the car arrived at Columbus over the railroad of said defendant and was delivered by it to the defendant, B. & O. Co., at 3:10 P. M. on June 14, 1909, which company carried the car to the Union Depot, a distance of about one mile, and placed the car on the "team track" at about 3:15 P. M. on the same day; that upon inspection the cucumbers contained in said car were found to be in a bad and unmerchantable condition, and were rejected by the consignees, William Fisher & Sons; that thereupon the cucumbers were sold for the defendant, B. & O. Co., and the net sum of $108.85 realized from the sale; that the total freight charges due when the car arrived at Columbus were $240; that said sum of $108.85 was received by the B. & O. Co., which sum, after deducting an icing charge of $9, was applied on said freight charges; and that the fair market value of the cucumbers, in good condition, at Columbus, on June 14, 1909, was $1 per crate, or $585.

The evidence does not disclose *where,* between Corpus Christi and Columbus, the cucumbers were damaged. Neither does the evidence clearly disclose what caused the damage. Some of the witnesses testified to the effect that fresh, green cucumbers, in good condi-

tion, if put in a refrigerator car, would remain in good condition while in transit for a period of ten days, provided the car from time to time was properly iced, but that if the car was allowed to become heated such cucumbers would spoil and turn in color. And one of plaintiff's witnesses, who inspected the cucumbers upon their arrival at Columbus, testified that they were "yellow and shriveled at the ends and had the appearance of having been heated."

From the evidence, as above outlined, we think it may properly be inferred that *somewhere,* between Corpus Christi and Columbus, the car in question was negligently allowed to become heated and the cucumbers thereby damaged.

"In the absence of evidence locating the damage to goods in transit over several connecting lines, a *prima facie* presumption arises that the *last* carrier is the negligent one." *St. Louis, I. M. & S. R. Co. v. Coolidge,* 73 Ark. 112, 114; Hutchinson on Carriers (3rd Ed.) sec. 1348. When the initial carrier receives goods in good order, the law presumes that each successive carrier, intermediate between the initial and last carrier, receives them in good order; and this presumption, working through to the last carrier who delivers them in bad order, casts the burden upon it to prove that it provided all suitable means of transportation and exercised that degree of care which the nature of the goods required, or to prove that the damage occurred before it received the goods (*St. Louis, I. M. & S. R. Co. v. Coolidge, supra; Ruddell v. Baltimore & O. R. Co.,* 175 Ill. App. 456, 457); and this presumption is equally applicable to the next preceding carrier where it is shown that the damage did not occur or could not have occurred while the goods were in the possession of the last carrier. Hutchinson on Carriers, sec. 1348; *Pennsylvania R. Co. v. Naive,* 112 Tenn. 239, 264; *Stolze v. Ann Arbor R. Co.,* 148 Wis. 205, 208;

*Harper Furniture Co. v. Southern Exp. Co.,* 144 N. C. 639, 644. And the presumption applies to perishable goods (*Trakas v. Charleston & W. C. R. Co.,* 87 S. C. 206, 208; *Forrester v. Georgia R. Co.,* 92 Ga. 699; *Ruddell v. Baltimore & O. R. Co., supra*), and to goods in sealed cars. *Stolze v. Ann Arbor R. Co., supra; Colbath v. Bangor & A. R. Co.,* 105 Me. 379, 383; *Beeds v. Wisconsin Cent. R. Co.,* 90 Minn. 36, 38. The purpose of the presumption is to "cast the burden of proof upon the party having the knowledge or means of knowledge to ascertain the truth." *St. Louis, I. M. & S. R. Co. v. Coolidge, supra.* And the presumption is one of convenience and necessity. *Colbath v. Bangor & A. R. Co., supra; Moore v. New York, N. H. & H. R. Co.,* 173 Mass. 335, 337.

Counsel for plaintiff contends that under the evidence the trial court erred in entering judgment against plaintiff and in favor of *both* defendants. It appears that the last carrier, the B. & O. Co., transported the car in question for a distance of about one mile and had possession of the car for only a very short space of time before it was placed on the team track at Columbus and opened and the cucumbers inspected, at which time, according to the testimony of a yard clerk of said defendant, the car "was cold." It is obvious that the deterioration in the cucumbers as proved could not have occurred while the car was in the possession of said defendant, B. & O. Co., and we think that the presumption of its liability was rebutted. *Stolze v. Ann Arbor R. Co., supra.* Counsel, in effect, admits this but argues that the presumption of liability on the part of the defendant, Southwestern R. Co., was not sufficiently rebutted, and that the Southwestern R. Co. is liable.

To rebut the presumption of liability said defendant "showed for an icing record that 4,200 pounds of ice had been placed in the car on June 13, 1909, *before* de-

livery" of the car to it; that on June 14th, at 6:40 a.
m., at Cincinnati, Ohio, 2,500 pounds of ice had been
placed in the car; and that there was "no delay in tran-
sit in the handling of the car between East St. Louis
and Columbus." On cross-examination one of the de-
fendant's witnesses testified that there was an icing
station about seventy miles, and another icing station
about one hundred ninety miles, west of Cincinnati, and
that the capacity of the ice tanks in the car was 9,000
pounds. We are of the opinion that this evidence,
taken in connection with the other evidence in the case,
is not sufficient to rebut the presumption of liability
on the part of the Southwestern R. Co., which the law
casts upon it. As we have above seen, when an initial
carrier receives perishable goods in good condition,
each successive carrier, intermediate between the ini-
tial and final carrier, is presumed to receive them in
good condition. In the present case the cucumbers
were shown to be in good condition when delivered to
the initial carrier at Corpus Christi, and the law pre-
sumes that the cucumbers were received in such condi-
tion when the defendant, Southwestern R. Co., received
them from the Terminal Railroad at East St. Louis.
This presumption is strengthened, we think, by the
fact that said defendant gave to the Terminal Railroad
a "clear receipt" for the car. *Morganton Mfg. Co.
v. Ohio River & C. Ry. Co.,* 121 N. C. 514, 518. Said
defendant introduced no affirmative evidence that the
damage to the cucumbers occurred before the car was
delivered to it. And we do not think the said evidence
as to the icing of the car and as to there being no *delay*
in the transit of the car between East St. Louis and
Columbus sufficiently proves that the defendant "ex-
ercised that degree of care which the nature of the
goods required" while the same were in its possession.
The record does not enlighten us as to the temperature
on June 13th or 14th, whether or not proper inspection

246        Appellate Courts of Illinois.

Trott v. The Baltimore & Ohio R. Co. et al., 192 Ill. App. 239.

as to condition of the ice tanks was made from time to time en route, or whether or not the car was *kept* cold during the entire trip from East St. Louis.

The trial judge certified to the making of certain decisions on questions of law involved in the case. The court held, in substance, that the diversion or reconsignment order given by plaintiff to the Missouri, Kansas & Texas Railway Company, and its acceptance, constituted a new contract of carriage between plaintiff and said railway company; that the shipment of the car from Corpus Christi to Columbus could not properly be considered as a through shipment; that plaintiff, by showing that the cucumbers left Corpus Christi in good condition and arrived at Columbus in bad condition, did not sufficiently establish a prima facie case against the defendants or either of them; and that in order to raise the presumpton of liability on the part of either of the defendants it was necessary for plaintiff to show by direct proof that the cucumbers were in good condition at St. Louis, Missouri.

Counsel for plaintiff contends, in substance, that, notwithstanding it appears that the cucumbers were diverted or reconsigned after their arrival on the team track at St. Louis, a sufficient prima facie case against the defendants was made; that defendants, as connecting carriers, are each presumed to have received the cucumbers in good condition, and that the trial court erred in holding that plaintiff must affirmatively show that the cucumbers were in good condition at St. Louis. Counsel for defendants rely upon two cases decided by this court, viz: *Deatwyler v. Oregon R. & Nav. Co.,* 176 Ill. App. 597, and *Fish v. Pere Marquette R. Co.,* 169 Ill. App. 629, as sustaining the holdings of the trial court. These were actions brought against the *initial* carrier who, under the facts and circumstances shown, was held discharged of liability. In *Ruddell v. Baltimore & O. R. Co.,* 175 Ill. App. 456, certain oranges

were delivered in good condition to the initial carrier at McPherson, California, to be shipped to Chicago. While en route they were diverted from Chicago to Baltimore and were delivered by the Northwestern Railroad Company, a connecting carrier, to said Baltimore & Ohio Railroad Company, and by that company conveyed to Baltimore. Upon their arrival at Baltimore they were found in bad condition, and Ruddell sued and obtained judgment against the Baltimore & Ohio Railroad Company, final carrier, for damages. It was urged in this court that, inasmuch as the original destination of the oranges was Chicago and as they were diverted to Baltimore, Ruddell could not recover without showing that they were in good condition when delivered to the Baltimore & Ohio Railroad Company, at Chicago. It appeared that the Baltimore & Ohio Railroad Company collected the entire freight from McPherson to Baltimore as one continuous transportation. The judgment of the lower court was affirmed.

The present case is quite similar to the *Ruddell* case, *supra*. It appears that the total freight charges due when the car arrived at Columbus was $240, and that the defendant, B. & O. Co., applied the net receipts from the sale of the cucumbers in part payment of said charges, and in its affidavit of set-off claimed a balance of $140.15, as due on the freight charges from Corpus Christi to Columbus. In the *Ruddell* case the diversion order was given and accepted before the goods had arrived at the original destination, while in the present case such order was given and accepted after the goods had arrived at the original destination. We do not think this makes any material difference. In each case the goods were still in the possession of the connecting carrier. The owner or consignee of goods has the right to divert or change the destination of them at any time while they remain in the possession of the carrier.

*Lewis v. Galena & C. R. Co.,* 40 Ill. 281; *Ruddell v. Baltimore & O. R. Co., supra.* And no reason is perceived why the shipment of the cucumbers in the present case should not be treated as a continuous shipment from Corpus Christi to Columbus, or why the established presumptions, above referred to, should not be applicable to the defendants. In our opinion the trial court erred in holding that it was necessary for plaintiff to show by direct proof that the cucumbers were in good condition at St. Louis, Missouri, in order to raise the presumption of liability on the part of the defendants, or either of them.

For the reasons indicated the judgment of the Municipal Court is reversed and the cause remanded.

*Reversed and remanded.*