# Wenatchee Valley Fruit Growers Association, Appellee, v. Michigan Central Railroad Company, Appellant.

## Gen. No. 25,046.

1. CARRIERS, § 82*—*what constitutes delivery of car of apples.* Where the only contract between a shipper and a common carrier called for delivery at Chicago, such delivery was accomplished by the placing of the car in question on defendant's public delivery-team track and the giving of notice, and a subsequent order to forward the car to a given destination operated as a new contract.

2. CARRIERS, § 139*—*what evidence necessary in action for damage to apples by frost.* Where a car of apples was delivered for transportation to a common carrier, apparently in good condition, at Detroit on December 10, for delivery to the consignee at Chicago, and after arrival at the latter place at 11:20 a. m. on the 12th was placed on the public delivery track at 2 p. m. on the same day and the proper parties then notified, and after the car had remained upon the track for 48 hours the carrier was notified to forward the car to a given destination on another railroad, the consignee was not entitled to recover damage sustained by frost, in the absence of evidence showing that the shipment was damaged while in the possession of the initial carrier.

3. CARRIERS, § 92*—*when shipment not regarded as continuous.* A shipment was not considered as continuous and not completed until arrival at its ultimate destination, where the freight rate was not a through rate from the starting point on the Michigan Central at Detroit to its destination on the Illinois Central, but was made up on charges from Detroit to Chicago and the charge was assessed by the Illinois Central without any indorsement on the original contract of shipment extending it.

Appeal from the County Court of Cook county; the Hon. J. J. COOKE, Judge, presiding. Heard in this court at the March term, 1919. Reversed and judgment here. Opinion filed October 27, 1919.

WINSTON, STRAWN & SHAW, for appellant; FRANK H. TOWNER, of counsel.

CHARLES A. BUTLER, for appellee.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

130    APPELLATE COURTS OF ILLINOIS.

Wenatchee Val. F. G. Ass'n v. Mich. Cent. R. Co., 215 Ill. App. 129.

MR. PRESIDING JUSTICE MCSURELY delivered the opinion of the court.

Plaintiff brought suit to recover for damages to a shipment of apples originally delivered to the defendant for transportation. Upon trial by the court plaintiff had judgment for $493.82, from which defendant appeals.

The declaration asserted negligence on the part of defendant and violation of its promise to carry the property safely. The evidence tended to show that the apples were delivered to defendant for transportation at Detroit on December 10, 1914, and were then apparently in good condition; that by the bill of lading they were consigned to the plaintiff at Chicago, where they arrived at 11:20 a. m. December 12. The car containing the shipment was placed on the public delivery team track of the defendant at 2 o'clock p. m. of the same day, and the parties handling the car on behalf of plaintiff notified at that time. The bill of lading contained a provision that after the car had been delivered, and remained there for 48 hours without removal by the consignee, defendant's liability as carrier would expire and it would hold the car as a warehouseman. After this 48-hour period had expired, the shipment still remaining upon the team track, that is, at 6 p. m. December 14, defendant received an order from plaintiff's agent to forward the car to the Central Fruit Auction Company, in Chicago, via the Illinois Central Railroad. This order was complied with. There is no claim of delay in handling the shipment on the part of the defendant. Plaintiff introduced evidence of an inspector who examined the apples when they were opened at the Central Fruit Auction Company, who testified that at that time they were damaged by frost. There was no attempt made to prove at what time this damage occurred. The theory of the plaintiff is that defendant was liable as carrier from the first receipt of the ship-

ment until its arrival at the Central Fruit Auction Company, and that it was liable for the damage from frost occurring during this time. On the other hand defendant contends that, having brought the car to Chicago and having placed it on the public delivery team track, there being no other place of delivery specified, and the proper parties having been notified of its arrival, the original contract of shipment, as evidenced by the bill of lading, had terminated, and that the order to forward the car to the Fruit Auction Company operated as a new contract, and that so far as the record shows the damage may have occurred during this movement, and plaintiff having failed to show the negligence alleged cannot recover against the defendant.

The question is not wholly free from difficulty. Some of the cases seem to hold that the shipment should be considered as a continuous one and not completed until arrival at its ultimate destination. As distinguishing, however, the facts in such cases from those now before us, it should be noted that the freight rate on this shipment was not a through rate from Detroit to its destination on the Illinois Central, but was made up of the charges from Detroit to Chicago, the reconsigning charge assessed at Chicago, and the charges assessed by the Illinois Central Railroad Company. There was no indorsement on the original contract of shipment extending it; the only contract between the parties called for a delivery at Chicago. This was accomplished by placing the car on defendant's public delivery team track and the giving of notice. In *Gregg v. Illinois Cent. R. Co.*, 147 Ill. 550, such delivery was held to complete the contract between the parties.

This court has had occasion to pass upon this question several times, and the opinions have been harmonious in holding, upon facts like those present, that the contract of shipment was completed and that the

initial carrier could not be held responsible for damages occurring on the reconsigned movement. Among the cases so holding are *Pittsburgh, C., C. & St. L. R. Co. v. Hedrich,* 202 Ill. App. 48; *Deatwyler v. Oregon Ry. & Nav. Co.,* 176 Ill. App. 597; *Fish v. Pere Marquette R. Co.,* 169 Ill. App. 629. The United States Supreme Court has had occasion to pass upon similar facts. In *Gulf, C. & S. F. Ry. Co. v. Texas,* 204 U. S. 403, the shipments had reached their destination, and stood on a sidetrack for 5 days before they were forwarded to the intrastate destination. The court held that the original contract had been completed and the reconsignment was an entirely separate transaction, the court saying that in obeying the shipper's further instructions the railroad was acting not as a carrier but simply as a forwarder. A similar case is *Chicago, M. & St. P. Ry. Co. v. Iowa,* 233 U. S. 334, where coal was placed on an interchange track at Davenport, Iowa, and the consignees notified. Thereafter the coal was reconsigned in the same cars to other Iowa destinations, and it was held that the second movement was a separate shipment entirely disconnected from the original interstate transportation. In *Settle v. Baltimore & O. S. W. R. Co.,* 249 Fed. 913, after the discussion of many cases, the court said in substance that the character of the shipment was to be ultimately tested by the consideration whether or not there was an actual delivery of the shipment to the consignee, and that the effect of such good-faith delivery is not changed by the existence of an original and continuing intention to reship. Other cases to the same import are *Wien v. New York Cent. & H. River R. Co.,* 166 N. Y. App. Div. 766; *Sheehy v. Wabash R. Co.,* 169 Mich. 604; *Howatt v. Barrett,* 156 N. Y. App. Div. 849.

We are of the opinion that what is said in the above cited cases applies to the present question, and following them we hold that plaintiff by failing to prove that the shipment was damaged while in the possession of

the defendant, cannot sustain its judgment.

This point was properly raised by requesting the court to so find in a proposition of law. It was error for the trial court to refuse this.

Other points have been presented as matters of defense, about which we express no opinion, as our holding as above indicated determines the suit. There is no controversy as to the facts, which for the most part are stipulated, and as there can be no recovery in this case the judgment will be reversed and judgment of *nil capiat* will be entered in this court.

*Reversed and judgment here.*