ROBERT STRAHORN *et al.*

*v.*

THE UNION STOCK YARD & TRANSIT COMPANY.

1. CONSIGNOR — *of property in transitu — may change its destination.* A consignor of property *in transitu* has the right to direct a change in its destination, and have it delivered to a different consignee, and the carrier is bound to obey such direction.

2. CONSIGNEE — *to enforce lien for general balance against the consignor — must have possession of the property.* And when in such case the destination is changed, and the consignee, from whom the consignment is taken, does not obtain possession of the property before notice given to the carrier that the property is to be delivered to another and different consignee, such first named consignee acquires no lien on the property, for any general balance against the consignor.

3. FORMER DECISIONS. The case of *Lewis* v. *The Galena & Chicago U. R. R. Co.*, 40 Ill. 283, being like the present one, the decision in that case must govern in this.

APPEAL from the Superior Court of Chicago.

The facts in the case are fully stated in the opinion.

Mr. J. V. LE MOYNE, for the appellants.

Mr. GEORGE C. CAMPBELL, for the appellees.

Mr. Chief Justice Walker delivered the opinion of the Court:

This was an action of trover, brought by appellants in the Superior Court of Chicago, against appellees, for the recovery of a car load of hogs. On the trial it appeared in evidence, that appellants, in September, 1866, wrote a letter to M. V. Butler, at Iowa City, in which they authorize him to draw on them for $500, and for the balance when he gets stock to the railroad; but would not like him to hold it more than a week at a time. On the back of the letter they indorsed the following:

"First National Bank, Iowa City: We will honor all drafts drawn on us by M. V. Butler.

R. Strahorn & Co."

Butler gave this letter of credit to Hubbard, the cashier of the bank, and it seems, that an arrangement was made by which Butler could, in purchasing hogs, check on the bank to pay for hogs purchased, and then draw upon Strahorn & Co., to cover such advances. Hubbard testifies, that Butler never drew in advance of purchases, but made his checks on the bank for his purchases, and afterward drew upon Strahorn & Co., to cover such advances.

The business continued in this manner until the 30th of January, 1867, when the last draft was drawn by Butler on appellants. This draft was for $1,000, at three days after sight, and was delivered to Hubbard, the cashier, and lacked something of balancing his account with the bank. It seems, that between that date and the third of February, the bank advanced $1,295.75 to Butler, and he had, in the mean time, made deposits sufficient to cover the balance against him on the 30th of January, 1867, and to reduce the balance due the bank to $800.

On the 3d day of February, Hubbard received a letter from appellants, that they would accept no more drafts drawn by Butler. Hubbard thereupon saw Butler at the depot, and learned that the hogs had just been shipped to appellants. He insisted, that Butler should secure the bank for the money it

had advanced to purchase this car load of hogs. Butler thereupon sold the hogs to Hubbard for $1,074.80, being the amount paid for the hogs, and the sums still due the farmers of whom they were purchased, which the bank agreed to, and did afterward pay. The railroad agent at Iowa City was notified of the sale, and Butler gave up the freight receipt, and the railroad company gave to Hubbard a new one, and he directed, that the hogs be delivered to Conger & Co., on his account. Butler gave the agent at Iowa City, an order to the agent at Chicago, notifying him, that he had sold the hogs to Hubbard, and directing him to deliver them on their arrival to R. P. & M. Conger for Hubbard. The order was immediately sent to the agent at Chicago, and he was directed to change the name on the way-bill from Strahorn to Conger & Co.

The hogs arrived at Chicago on Sunday, the 4th of February, and were delivered to appellee. The way-bill named Strahorn & Co., consignee for account of M. V. Butler, with a line erased, and these words written in: "Consignee Conger & Co., account of W. H. Hubbard." The stock was unloaded at the yards and placed in a pen, and fed over Sunday by the order of Strahorn's agent, but the freight was not paid, and an actual delivery was not made to them.

The letter of the agent at Iowa City was received by the agent at Chicago, who sent it to the agent of the railroad company, who had unloaded the hogs and delivered them to the stock company. On Monday morning, the 5th, the stock-yard agent informed the division agent of the yard, that the consignment had been changed from Strahorn & Co., to Conger & Co., and that he must change it on the books, which he did, and Strahorn & Co. were informed of the change, and that they must not sell the hogs. The hogs remained in the actual possession of the stock-yard company until they were sold. They made no actual delivery to either consignee.

On Tuesday, the 6th, the railroad agent who delivered the hogs to the stock-yard, proposed to both consignees, that the hogs be sold, and the money held by the railroad company until it should be decided which of them was entitled to receive

it, to which they both agreed. The freight, sixty-four dollars, and the stock-yard charges, eight dollars for corn, and keeping the hogs, were paid by the railroad agent. A demand was made, and a refusal to deliver the hogs, and appellants sued to recover for a conversion. The cause was tried by the court by consent, and the issues were found for defendants. A motion for a new trial was entered, which the court overruled, and rendered judgment according to the finding; to reverse which this appeal is prosecuted.

It is insisted, that inasmuch as Butler was indebted to appellants on a general balance, and as he shipped to them this car load of hogs, appellants thereby acquired such a lien on the property, as placed it out of the power of Butler to sell the property to the bank, to pay their debt against him. There seems to be no question raised as to the *bona fides* of either of these debts. Appellants' claim was for a balance due on money advanced to pay for previous shipments, while the debt to the bank was for the very money paid on the purchase of these hogs. Had Butler the power, while the property was *in transitu*, to change its destination, and to have it delivered to a different consignee? In the case of *Winne* v. *Hammond*, 37 Ill. 99, it was held, that a factor has a lien for a general balance on the property of his principal, in his actual possession, and that such possession was notice of his lien to creditors and purchasers.

In the case of *Lewis* v. *Galena & C. U. R. R.*, 40 Ill. 281, the questions were very similar to these presented by this record. It was there said, "The question then, is, has the consignor of the property which he has put in the possession of a common carrier to be carried and delivered to a designated consignee, a right to change the destination before it is delivered, and can the carrier refuse to obey the consignor's orders to that effect? The principle may be broadly stated, that a consignor of goods has the right to direct a change in their destination, and that the carrier is bound to obey such directions." In that case, as in this, the consignor was indebted to the consignee on a general balance. The court say, "It is in vain to pretend that Campbell & Woodruff had any lien or

claim on this grain; it was never in their possession, symbolically, by bill of lading, or actually, by delivery, before the notice was given to the railroad company by the consignors, that they had made advances upon it." Appellants, in this case, had not acquired possession of the hogs, any more than had the consignees of the grain, in that case. In both, the bill of lading and contract for the freight described the consignee. The carrier had, in each case, received the actual possession of the property to be transported, and in the same manner, in each case, the destination was changed by the order of the consignor. No material difference is perceived in the two cases, and that must govern this. The judgment of the court below is affirmed.

*Judgment affirmed.*