# F. E. Lewellyn, Plaintiff in Error, v. Pere Marquette Railroad Company, Defendant in Error.

## Gen. No. 18,728.

1. CARRIERS, § 70*—*implied contract to carry safely and within reasonable time.* A carrier accepting property for transportation impliedly agrees to carry it safely and deliver it at its destination within a reasonable time.

2. CARRIERS, § 188*—*connecting carrier as agent.* A connecting carrier accepting goods from the initial carrier becomes the agent of the latter in transporting same.

3. CARRIERS, § 66*—*change of destination.* A consignor is entitled to have directions changing the destination of goods carried out, although at the time such directions are given to the initial carrier the goods have passed into the possession of a connecting carrier.

4. CARRIERS, § 188*—*consent to change of destination by initial carrier.* Where after goods had passed into the hands of a connecting carrier the consignor changed the destination and a new bill of lading was issued by the initial carrier, such change was made with the mutual consent of the parties, and the initial carrier thereby agreed to transport the goods safely to the new destination within a reasonable time.

5. CARRIERS, § 55*—*bills of lading.* Where after the goods shipped had passed into the possession of a connecting carrier the consignor gave instructions changing the destination and surrendered the original bill of lading to the initial carrier, receiving in lieu thereof a new bill of lading giving the new destination, the act of the agent in issuing such new bill of lading was not without authority or consideration.

6. CARRIERS, § 188*—*liability of initial carrier for delay by connecting carrier.* Plaintiff shipped a carload of potatoes over defendants' road to Sedalia, Missouri. After the car had passed into the possession of a connecting carrier, but before its arrival at Sedalia, plaintiff gave instructions changing the destination to Houston, Texas, surrendering his original bill of lading and receiving from defendant in lieu thereof another bill giving the new destination. Defendant promptly notified the connecting carrier of the change in destination, but through the negligence of the latter the car did not arrive in Houston until a month after its arrival at Sedalia, when the potatoes were found to be in bad condition. It was *held* that defendant was liable for the damages sustained by plaintiff

*See Illinois Notes Digest, Vols. XI to XV, same topic and section number.

as a result of the negligent delay on the part of the connecting carrier.

7. MUNICIPAL COURT OF CHICAGO, § 31*—*disposition of cause on appeal.* Where in a fourth class case tried in the Municipal Court, without a jury, upon a stipulation as to the facts the finding of the court was the result of a misconception by it of the law applicable to the admitted facts, the Appellate Court may, on reversing the judgment, enter the judgment which the court below should have entered.

8. APPEAL AND ERROR, § 50*—*necessity for findings on reversal without remand.* Where the case was tried below on a stipulation of facts and the finding below is based upon a misconception of the law applicable to the admitted facts, the Appellate Court in reversing the judgment below and entering final judgment need not recite in its final order the facts found.

Error to the Municipal Court of Chicago; the Hon. CHARLES E. JENNINGS, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1912. Reversed and judgment here. Opinion filed February 5, 1914.

Statement by the Court. Upon the trial of a fourth class case, without a jury, in the Municipal Court of Chicago, the court found the issues against the plaintiff below and entered judgment on the finding in favor of the defendant. The case was submitted upon a stipulated statement of facts, which was all the evidence heard by the court, substantially as follows:

On January 4, 1911, at Scottville, Michigan, plaintiff delivered to the defendant, Pere Marquette Railroad Company (hereinafter referred to as the defendant company), a carload of potatoes, and received from it a bill of lading therefor, showing the name of the consigner as F. E. Lewellyn and the name of the consignee as F. E. Lewellyn, Sedalia, Missouri, and the car number 3154. At the time of the delivery of the potatoes to the defendant company they were in good condition and were accepted by it as being in such condition. The car arrived at Chicago over the rails of the defendant company on January 8th, when and where it delivered the car to the Illinois Central Rail-

road Company (hereinafter referred to as the I. C. Co.), the connecting carrier.  The I. C. Co. accepted the car for shipment and delivered the car at Sedalia, Missouri, within a reasonable time, on January 11th, the potatoes then being in good condition. *Prior* to the arrival of the car at Sedalia, Missouri, and while the same was *en route* from Chicago and in the possession of the I. C. Co., plaintiff instructed the defendant company to "divert or reconsign" the shipment from Sedalia, Missouri, changing the destination of said shipment to "F. E. Lewellyn, Houston, Texas; notify Hencke & Pillott," and on January 10th, plaintiff surrendered to the defendant company the original bill of lading, received by him on January 4th, and he received "in lieu thereof a new bill of lading, dated at Scottville, Michigan, January 10, 1911."

A copy of this bill of lading was attached to said stipulated statement of facts, marked "Exhibit A." On its face is the heading "Pere Marquette Railroad Company." Underneath this heading it is stated, *inter alia,* that "this memorandum is an acknowledgment that a bill of lading has been issued and is not the original bill of lading, nor a copy or duplicate, covering the property named herein, and is intended solely for filing or record," and that there has been "received, subject to the classifications and tariffs in effect on the date of the receipt by the carrier of the property described in the original bill of lading, at Scottville, January 10, 1911, from F. E. Lewellyn, the property described below, in apparent good order, * * * consigned and destined as indicated below, which said Company agrees to carry to its usual place of delivery at said destination, if on its own road, otherwise to deliver to another carrier on the route to said destination; * * * every service to be performed hereunder shall be subject to all the conditions, whether printed or written, herein contained (including conditions on back hereof) * * *." Below on the face

of the paper it is stated, *inter alia* that "sacked potatoes" have been "consigned to order of F. E. Lewellyn; destination, Houston, Texas; notify Hencke & Pillott at Houston, Texas; route, via M. K. & T.; car No. 3154; allow inspection; car forwarded on from Sedalia, Missouri, and all back charges to follow car on to destination." The paper is signed "R. Jacobus, agent" and "F. E. Lewellyn, shipper, per Compton," and on the back thereof is printed certain "conditions," in ten sections. Section 2 reads: "In issuing this bill of lading this Company agrees to transport only over its own line, and except as otherwise provided by law acts only as agent with respect to the portion of the route beyond its own line. No carrier shall be liable for loss, damage, or injury not occurring on its own road or its portion of the through route, nor after said property has been delivered to the next carrier, except as such liability is or may be imposed by law, but nothing contained in this bill of lading shall be deemed to exempt the initial carrier from any such liability so imposed."

It is further stated in said stipulated statement of facts, substantially, that the defendant company "promptly notified" the I. C. Co. of the "diversion order and change of destination," but that the I. C. Co. did not move the car of potatoes from Sedalia until February 10th, which length of time is admitted "to be unreasonable and to constitute negligent delay;" that on February 10th the I. C. Co. delivered said car to the Missouri, Kansas & Texas Railway Company at Sedalia, and that railroad company transported said car to Houston, where it arrived on February 16th and where "it was found to be in very bad condition," and because of which condition and said unreasonable delay in transportation it was rejected by Hencke and Pillott and subsequently disposed of by plaintiff "to the best possible advantage;" and that the amount of plaintiff's loss "on account of said unreasonable and negligent delay in transportation is $163.82."

HARRY S. DITCHBURNE, for plaintiff in error.

GLENNON, CARY, WALKER & HOWE, for defendant in error; BILLS, PARKER & SHIELDS, of counsel.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

Under the stipulated facts of this case it appears that on January 4, 1911, at Scottville, Michigan, the defendant company received from the plaintiff for shipment a carload of potatoes in good condition and issued and delivered to plaintiff a bill of lading showing that the potatoes were consigned to plaintiff, as consignee, at Sedalia, Missouri. By this act the defendant company impliedly agreed to carry the potatoes safely and deliver the same at said destination within a reasonable time. *Chicago & A. R. Co. v. Kirby*, 225 U. S. 155, 164. It further appears that *prior* to the arrival of the potatoes at said destination, and while the same were *en route* from Chicago, Illinois, and in the possession of the connecting carrier, Illinois Central Railroad Company (which last named company was the agent of the defendant company in transporting the potatoes part of the way, viz., from Chicago to said destination *Atlantic Coast Line R. Co. v. Riverside Mills*, 219 U. S. 186, 205), plaintiff instructed the defendant company to change the destination of the potatoes to Houston, Texas, plaintiff to remain the consignee and Hencke & Pillott to be notified. In our opinion plaintiff was entitled to have these instructions carried out. And we think that the fact that, at the time said instructions as to the change of destination were given to the defendant company, the potatoes were not then in the actual possession of the defendant company but in the possession of the connecting carrier, I. C. Co., makes no difference. They had not yet arrived at Sedalia, Missouri, and were still in the possession of the agent of the defendant company.

It further appears from the stipulated statement of facts that one day *prior* to the arrival of the potatoes at Sedalia the plaintiff surrendered the original bill of lading to the defendant company and received "in lieu thereof," at Scottville, Michigan, the new bill of lading above described. By this transaction a change in the destination of the potatoes was made by the parties by mutual consent, and by it the defendant company, as a common carrier, agreed to carry the potatoes safely to the new destination, Houston, Texas, within a reasonable time. *Mahaffey v. Wisconsin Cent. Ry. Co.,* 147 Ill. App. 43, 47.

It is contended by counsel for the defendant company that the agent of the defendant company at Scottville, Michigan, was without authority to issue the new bill of lading and that there was no consideration for its issuance. Under the facts of this case and under the law we think these contentions are without merit.

It further appears from the stipulated statement of facts that "*said defendant* promptly notified" the I. C. Co. of the "diversion order and change of destination," but that, because of the "unreasonable and negligent delay" of the I. C. Co. in not moving the potatoes from Sedalia, and in not delivering them to the M. K. & T. R. Co. to be transported to Houston, until February 10th (although they had arrived in Sedalia on January 11th), the potatoes did not arrive at Houston until February 16th; that when they did arrive they were in bad condition; that because of this condition and said delay they were rejected and that on account of said delay in transportation plaintiff lost the sum of $163.82.

Section 20 of the Interstate Commerce Act, as amended by the Act of January 29, 1906, commonly known as the Carmack Amendment (34 U. S. Stat. at Large, 595), provides in part as follows:

"That any common carrier, railroad or transportation company, receiving property for transportation from a point in one State to a point in another State,

shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by any common carrier, railroad or transportation company, to which such property may be delivered or over whose line or lines such property may pass; and no contract, receipt, rule or regulation shall exempt such common carrier, railroad, or transportation company from the liability hereby imposed: *provided,* that nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing law.''

We are of the opinion that, under the stipulated facts of this case, the finding of the court below is contrary to the law and the evidence, and that the court erred in entering judgment in favor of the defendant company. *Atlantic Coast Line R. Co. v. Riverside Mills,* 219 U. S. 186; *Adams Express Co. v. Croninger,* 226 U. S. 491; *Fry v. Southern Pac. Co.,* 247 Ill. 564. We think the trial court should have found the issues in favor of the plaintiff and entered judgment against the defendant company in the sum of $163.82.

This case was one of the fourth class tried in the Municipal Court, without a jury, upon a stipulation as to the facts. The stipulation contained all the evidence offered or heard by the court, and by it the parties agreed, in addition to certain evidentiary facts, to certain ultimate or substantive facts upon which, in our opinion, the determination of the cause depended. The amount of plaintiff's loss occasioned by unreasonable and negligent delay in the transportation of the potatoes was admitted to be $163.82. The finding of the court was a general finding of the issues against the plaintiff. We think that the finding was the result of a misconception by the trial court of the law applicable to the admitted facts. And we think that upon the admitted facts we are authorized, not only to reverse the judgment of the court below, but to here enter judgment in the sum of $163.82 in favor of the plaintiff and against the defendant company. *Manistee*

*Lumber Co. v. Union Nat. Bank of Chicago,* 143 Ill.
490, 504; *Osgood v. Skinner,* 186 Ill. 491, 495; *City of*
*Spring Valley v. Spring Valley Coal Co.,* 173 Ill. 497,
506.

By section 120 of the Practice Act (J. & A. ¶ 8657),
it is made the duty of this court, upon the final deter-
mination of any cause as the result wholly or in part
of the finding of the facts *different* from the finding
of the court below, to recite in its final order or judg-
ment the facts as found. And it has been held that
this rule is applicable where there is "a stipulation as
to the *evidentiary* or probative facts in the case." *Na-*
*tional Linseed Oil Co. v. Heath & Milligan Co.,* 191 Ill.
75, 78; *Seeberger v. McCormick,* 178 Ill. 404, 411. In
this case we do not find the ultimate or substantive
*facts* different from those contained in the stipulation
of the parties, and we are not required to recite in
our final order or judgment our *conclusions of law* on
the ultimate facts. *American Trust & Savings Bank v.*
*Lantry Contracting Co.,* 257 Ill. 271, 272; *Nonotuck*
*Silk Co. v. Adams Express Co.,* 256 Ill. 66, 68. In *Na-*
*tional Linseed Oil Co. v. Heath & Milligan Co., supra,*
it is said: "It is undoubtedly true that where the
parties agree to the ultimate fact or facts in a case
and submit it to a trial court for decision, the ques-
tion before that court and on appeal to the Appellate
Court, and finally to this court, presents only a ques-
tion or questions of law; and in such case, if the Appel-
late Court reverses the judgment of the trial court and
enters a final judgment, no recital of the facts found
by it in its judgment is necessary upon appeal or writ
of error to this court." We conclude that in this case
no recital of the ultimate facts as found by us need
be incorporated in our judgment order.

The judgment of the Municipal Court is reversed
and judgment is entered in this court in favor of F. E.
Lewellyn and against the Pere Marquette Railroad
Company for the sum of $163.82.

*Judgment reversed and judgment here.*