A. E. MYERS & CO. v. NORFOLK SOUTHERN RAILROAD COMPANY
AND J. I. SMITH.

(Filed 15 March, 1916.)

1. **Carriers of Goods—Title of Goods—Conditions—Constructive Title—Consignor.**

Where a shipment of a car of goods is upon condition that the consignee pay cash for them or wire payment of a draft for the purchase price, which has not been done, the title does not vest in the consignee, and the delivery to the carrier is not a constructive delivery to him. Hence, where the carrier under such circumstances, agrees with the consignor in writing, upon the original bill of lading, to change the des-

tination of the shipment and the consignee, and the goods are not delivered accordingly, the consignor may maintain his action against the carrier for damages for their loss.

## 2. Same—Reconsignment—Contract—Consignee's Consent.

Where the nonperformance by a consignee of certain conditions prevents the title to a shipment of goods by a common carrier vesting in him, the consent of the consignee to a reconsignment is not necessary for the consignor to maintain an action against the carrier for the loss of the goods under the second contract of carriage.

## 3. Carriers of Goods—Connecting Lines—Initial Carrier—Carmack Amendment.

Where a carrier issuing the bill of lading for a shipment of goods over its own and other independent roads agrees in writing before delivery, upon the original bill of lading, to a reconsignment of the goods, it is the initial carrier within the meaning of the Carmack Amendment.

APPEAL by plaintiffs from *Bond, J.,* at November Term, 1915, of CRAVEN.

This is a civil action to recover damages for the loss of 181 barrels of Irish potatoes.

The plaintiff offered evidence tending to prove that on 17 June, 1913, J. I. Smith delivered to the defendant at Oriental, N. C., 181 barrels of Irish potatoes, of the value of $271.50, to be shipped on open bill of lading to the Union Town Produce Company at Union Town, Pa.; that the agreement with the produce company was that it was to pay cash for the potatoes and that it would wire a bank at New Bern to honor the draft of Smith for the same; that on 18 June, 1913, the said Smith learned that the said produce company had failed to wire a bank at New Bern to pay his draft, and that the said produce company was not going to take the potatoes; that the said Smith then applied to the defendant to reconsign said potatoes to the plaintiffs in this action; that the defendant, after making some inquiry, told the said Smith that it had found the car in which the potatoes were shipped and could reship the same; that the defendant then wrote on the original bill of lading the following:

This shipment reconsigned to A. E. Myers & Co., New York, this 18 June, 1913, authority J. I. Smith, he furnishing indemnity bond, which is forwarded to J. E. Boswell, Agent, Oriental, N. C., for his file.                                          E. W. WARREN, *Agent,*
                                                        *New Bern, N. C.*
                                          J. E. BOSWELL, *Agent.*

That the plaintiffs, upon being notified of the consignment of the potatoes to them, paid for the same; that said potatoes have never been delivered to the plaintiffs.

The defendant offered evidence tending to prove that the potatoes had already been delivered to a connecting carrier on 18 June, 1913, at the time the said Smith applied for a reconsignment of the potatoes to the plaintiffs; that it used due diligence to have them delivered to the plaintiffs, but that it failed to do so.

The produce company has never paid anything for the potatoes.

At the conclusion of the evidence his Honor stated that he would charge the jury that if they found the facts to be as shown by the evidence, it would be their duty to say that the defendant was not indebted to the plaintiffs, and the plaintiffs thereupon submitted to judgment of nonsuit and appealed.

*T. D. Warren for plaintiff.*
*Moore & Dunn for defendant.*

ALLEN, J.  The ruling of his Honor is predicated upon the idea that the plaintiffs are not entitled to recover if their evidence is accepted by the jury, and we must, therefore, assume, for the purposes of this appeal, that all inferences that may be reasonably drawn from the evidence are established.

The contention of the defendant is that if this is done the evidence shows a shipment on an open bill of lading to the produce company; that this vested the title to the potatoes in that company, and that the consignor, Smith, had no authority to reconsign the shipment, and that no title to the potatoes ever vested in the plaintiffs.

This position would be unanswerable but for the fact that the consignor, Smith, was the owner of the goods at the time of the reconsignment to the plaintiffs, if the evidence is believed, and the further fact that the defendant consented to the reconsignment, and in effect issued a new bill of lading consigning the shipment to the plaintiffs.

When a sale of goods is made for cash or upon condition that a certain act will be performed by the vendee, and the cash is not paid nor the conditions performed, the title to the goods remains in the vendor, and he may maintain an action for their recovery even after the delivery to the vendee.  *Smith v. Young,* 109 N. C., 224; *Millhiser v. Erdmann,* 103 N. C., 33.

If so, and the evidence of the consignor, Smith, is true, he was the owner of the potatoes at the time of the reconsignment to the plaintiffs, as he testifies that the sale was for cash and that the produce company had agreed to wire a bank in New Bern to pay his draft for the purchase price; and that the produce company had failed to pay the cash or to wire authorizing the bank to pay his draft.

There is also evidence that at the time of the reconsignment the potatoes were in the possession of or under the control of the defendant, as the consignor testifies that he called at the office of the superintendent

of the defendant on 18 June, 1913, while the potatoes were in transit, and asked to have them reshipped to the plaintiffs at New York, and he was told to come back later and they would let him know if they could get in touch with the potatoes; that he went back, and was told they had found the car and could have it reshipped, and that thereafter, on the same day, the original bill of lading was indorsed by the defendant consigning the shipment to the plaintiffs.

We have, then, on the plaintiffs' evidence the case of the title to a consignment of goods revesting in the consignor after delivery to the carrier by reason of the failure of the consignee to perform the conditions annexed to the vesting of the title in him, and a new contract of shipment executed by the defendant while the goods were in its possession or under its control, consigning the goods to the plaintiffs. Is this new contract valid and binding on the defendant?

The position of the defendant is that it is not, because not assented to by the original consignee; but the authorities are otherwise.

The principle is stated in 2 Hutchison on Carriers, sec. 660, to be that "So long as the goods remain the property of the bailor he may countermand any directions he may have given as to their consignment, and may at any time during the transit require of the carrier their redelivery to himself"; and in 1 Moore on Carriers, p. 213: "Where a common carrier receives goods for transportation and delivery to the consignee without any qualification or restriction, the consignor parts with the goods and all control over them, and the delivery to the carrier is a delivery to the consignee's agent, and the consignor cannot by a subsequent direction to the carrier prevent their delivery to the consignee, unless such facts are shown as will justify the stoppage of the goods *in transitu;* and where by subsequent direction of the consignor the carrier delivers the goods to another person, it is liable for conversion. But where the delivery to the carrier is qualified, restricted, or conditional, as, for example, where the carrier is notified by the shipper, after delivery to it of the goods, not to deliver them to the consignee until he presents the bill of lading and a draft drawn upon him, the delivery to the carrier is not a delivery to the consignee, and the consignee, on refusal to comply with the condition, acquires no right or title to the property, and a delivery by the carrier to the consignee under such circumstances renders the carrier liable to the consignor. The consignor under such circumstances may change the consignee while the goods are in transit, and has the same right to change their destination after the goods have passed into the hands of a connecting carrier by taking a new bill of lading."

The Supreme Court of Kentucky also announces the same rule in *R. R. v. Hartwell,* 99 Ky., 438, as follows: "The shipper of goods may,

even after the delivery to the carrier and after the bill of lading has been signed and delivered, alter the destination and direct their delivery to another consignee, unless the bill of lading has been forwarded to the consignee or some one for his use"; and the Supreme Court of Illinois, in *Lewis v. R. R.,* 40 Ill., 281, which was afterwards approved in *Strahon v. R. R.,* 43 Ill., 424, "The principle may be broadly stated that a consignor of goods has the right to direct a change in their destination, and that the carrier is bound to obey such directions."

The question has not been directly presented to this Court before this, but it was considered in *Development Co. v. R. R.,* 147 N. C., 506, where the Court quotes and approves the following excerpt from Hutchison on Carriers, sec. 193: "When there has been no agreement to ship the goods which will make the delivery of them to the carrier a delivery to the consignee and vest the property in him, the shipper may, even after the delivery to the carrier and after the bill of lading has been signed and delivered or after the goods have passed from the possession of the initial carrier into that of a succeeding one, alter their destination and direct their delivery to another consignee, unless the bill of lading has been forwarded to the consignee first named or to some one for his use."

The defendant also contends that it is not an initial carrier within the meaning of the Carmack amendment; but it appears that the shipment originated upon the line of the defendant, and that the only contract of carriage in existence was made by the defendant, and this constitutes it an initial carrier.

We are, therefore, of opinion that his Honor was in error in holding that the plaintiff could not recover in any view of the evidence, which is the effect of his ruling.