7658.  BALTIMORE & OHIO RAILROAD COMPANY *v.*
        MONTGOMERY & COMPANY.

Under the facts of the case the defendant was the initial carrier and was liable for the damage to the shipment involved.

DECIDED NOVEMBER 22, 1916.

Action for damages; from municipal court of Atlanta.  June 23, 1916.

*King & Spalding,* for plaintiff in error.

*Moore & Pomeroy,* contra.

BROYLES, J.  While in a suit for damage to an interstate shipment handled by more than one carrier, the provisions of what is known as the "Carmack amendment" (Act of June 29, 1906, 34 Stat. 593, c. 3591) to the act of Congress known as the "Hepburn act" (the act of February 4, 1887, 24 Stat. 379, c. 104, U. S. Comp. St. 1913, § 8592, pars. 11, 12) do not require that the suit shall in all cases be brought against the initial carrier (Georgia, Florida & Alabama Ry. Co. *v.* Blish Milling Co., 241 U. S. 190, 36 Sup. Ct. 541, 60 L. ed. 948; *Central of Georgia Ry. Co.* v. *Waxelbaum Produce Co.,* 18 *Ga. App.* 489, 89 S. E. 635), yet, under the facts of the instant case, the defendant railroad company would not be liable to the plaintiff, if it was not the initial carrier of the shipment; and the sole question for determination is, was the defendant the initial carrier?  There is no dispute as to the facts in the case.  The Branch Mountain Orchard Company, the shipper, delivered to the Baltimore & Ohio Railroad Company, the initial carrier, at Moorefield, West Virginia, on August 22, 1915, a carload of peaches in B. & O. refrigerator car No. 14773; and the railroad company on the same day issued to the shipper a bill of lading, in which the destination given was Richmond, Virginia, and the consignee Montgomery & Company at Richmond, Virginia.  This car was delivered by the Baltimore & Ohio Railroad Company to the Richmond, Fredericksburg & Potomac Railroad Company, at Potomac Yard, Virginia, and arrived at Richmond, Virginia, August

24, 1915, where the contents of the car were inspected by Montgomery & Company and found to be in good condition. On the same date this car was delivered to the Atlantic Coast Line Railroad Company at Richmond, and was reshipped to E. B. Stewart & Company, Atlanta, Georgia, *upon the original bill of lading issued by the defendant.* The bill of lading issued by the Baltimore & Ohio Railroad Company was the only bill of lading issued during the transit of the shipment. It was undisputed that Montgomery & Company were the lawful holders of this bill of lading.

The Federal interstate commerce act, as amended, expressly provides that the initial carrier shall issue a receipt or bill of lading, and shall be liable to the lawful holder thereof for any loss, damage, or injury to the property, caused by it or by any common carrier, railroad, or transportation company to which such property may be delivered, or over whose lines such property may pass. In interstate shipments the consignee is the presumptive owner, and has the right to direct a change in the destination of the shipment. Hutchinson on Carriers, § 735. When the defendant, the initial carrier, issued the bill of lading in which Montgomery & Company were named as the consignee, it was with the knowledge that the law gave this consignee the right to change the destination, and with the knowledge that the law put upon it (the initial carrier) the burden of paying for damage to the shipment, if any was sustained, whether the damage was caused by the defendant or by a connecting carrier. The destination was changed from Richmond to Atlanta by the consignee. The shipment was carried from the point of origin,—Moorefield, West Virginia,—to Atlanta, Georgia, under one contract,—the bill of lading issued by the defendant company,—and the shipment moved under a through rate of freight from the point of origin to Atlanta, the final destination, as appears from the freight bill. If the defendant or its connection had delivered the shipment at Richmond, demanded a surrender of its bill of lading, and there collected its freight charges, and thereafter a new bill of lading had been issued for the shipment from Richmond, Virginia, to Atlanta, then there would have been a new shipment, and the railroad issuing this second bill of lading at Richmond would have been the initial carrier of the shipment from Richmond to Atlanta. In this connection see Myers *v.* Norfolk Southern R. Co., 171 N. C. 190 (88 S. E. 149). Under the

evidence adduced, the only contract made was by the defendant company, as represented by its bill of lading. The shipment moved from Moorefield, West Virginia, to Atlanta, Georgia, under that bill of lading; the freight was paid in Atlanta for the transportation not merely from Richmond to Atlanta, but for the entire journey from Moorefield to Atlanta.

Learned counsel for the plaintiff in error cite the case of Parker-Bell Lumber Co. v. Great Northern Ry. Co., 69 Wash. 123 (124 Pac. 389, 41 L. R. A. (N. S.) 1064), as authority for the proposition that the initial carrier is not bound where the property is reconsigned by the consignee. The facts in that case, however, were that a carload of shingles was delivered to the Great Northern Railway for shipment from Sisco, Washington, to Kankakee, Illinois. The railroad company issued its bill of lading and routed the shipment over its own line of railway, and the lines of the Chicago, Burlington & Quincy Railroad Company, the Indiana, Illinois & Iowa Railroad Company, and the Chicago, Indiana & Southern Railroad Company, which lines together form a continuous line of railway from Sisco, Washington, to Kankakee, Illinois. The shipper, without notice to the Great Northern Railway Company, instructed the final connecting carrier named in the bill of lading, and over whose line the shipment arrived at Kankakee, to divert the shipment to Palisades Park, New Jersey. That carrier, upon receiving such instructions, *issued a new bill of lading, reciting the shipment of the carload of shingles from the Parker-Bell Lumber Co. at Kankakee, Ill., to Palisades Park, N. J.,* and forwarded the shipment over a new line of connecting railways to its new destination. Under such facts the Supreme Court of Washington held that the Great Northern Railway Company was not liable for damages to the shingles incurred while they were being transported to the new point of destination, to wit, from Kankakee, Ill., to Palisades Park, N. J.

Under all the facts of the instant case, the defendant railroad company was the initial carrier of the shipment involved; and the appellate division of the municipal court of Atlanta (Fulton section) did not err in overruling the motion for a new trial.

*Judgment affirmed.*