The plaintiff on 26 February, 1913, shipped 72 bales of cotton over the "Daniels Roanoke River Line" of steamers (one of defendants), consigned on the face of the bill of lading to "W. L. Hall, *Page 154 
Plymouth, N.C." order, notify, "care of Atlantic Coast Line Railroad Company." This cotton was delivered to said company at Jones' Landing on Roanoke River about 35 miles above Plymouth. The Daniels Roanoke River Line carried this cotton down Roanoke River, but instead of stopping at Plymouth, which is located on that river, where both the Norfolk Southern and Atlantic Coast Line have wharves, carried the cotton on 35 miles further to Edenton, N.C. and there delivered it to the other defendant, the Norfolk Southern Railway Company, which hauled it back over their tracks to Plymouth and switched it to the track of the Atlantic Coast Line Railroad, charging the plaintiff $72 in freight and $4 switching charges, which the plaintiff had to pay, besides (109) surrendering the bill of lading, before he could have the cotton delivered to the Atlantic Coast Line Railroad.
While there was no tariff rate, shown in the bill of lading, from Jones' Landing to Plymouth, by the tariff rates which the defendants contend were in effect the rate on a bale of cotton from Jones' Landing to Edenton, which is 25 miles beyond Plymouth, was 50 cents per bale. When the witness learned that the cotton had been carried by Plymouth to Edenton, he went to the latter town and, finding the cotton in the hands of the Norfolk Southern Railroad Company, presented his bill of lading and demanded that it be turned over to him there. This was refused, and subsequently the cotton was shipped back over the Norfolk Southern, and at that point he paid the agent as above 50 cents per bale from Jones Landing to Edenton and another 50 cents from Edenton back to Plymouth, and $4 extra charges, making $76.
According to the law of this State, the Daniels Roanoke River Line could not have charged more from Jones Landing to Plymouth than to Edenton, and there was nothing in the bill of lading which authorized the cotton to be shipped via Edenton. It was the duty of the Daniels Roanoke River Line to have delivered this cotton to the Atlantic Coast Line Railroad, at Plymouth, which is a well known shipping point and where the record states that the Atlantic Coast Line, in whose care this cotton was shipped, had a wharf. It was an entirely officious act to carry the cotton on to Edenton, and for this no charge could have been made; and, having done so, it was the duty of said company to have brought the cotton back to Plymouth at its own expense.
This cotton was shipped "order, notify" — that is, the shipper retained the control over it; and, as was held in Myers v. Railroad,171 N.C. 193, quoting 2 Hutchison Carriers, sec. 660, "So long as the goods remain the property of the bailor he may countermand any directions he may have given as to their consignment, and may at any time during the transit require of the carrier their redelivery to himself." This *Page 155 
doctrine is fully settled by the other authorities cited in Myers' case. Besides, in this case the shipper had not even consigned the goods by Edenton nor over the Norfolk Southern Railroad Company, whose agency was not necessary in shipping goods from Jones Landing to Plymouth. It may be that the Norfolk Southern Railroad Company was the "friend" of the Daniels Roanoke River Line, and the Atlantic Coast Line Railroad was not, probably for the reason that the latter parallels the Daniels River Line from Williamston to Plymouth, and is to some extent a competitor; but if the Daniels River Line wished to give a job to its friend of hauling back the cotton from Edenton to Plymouth, and carried it on from Plymouth to Edenton for that purpose, it should have done so at its own expense and not have doubled, or more, the mileage charged against the shipper. The unnecessary (110) transportation from Plymouth to Edenton and back to Plymouth was 50 miles, being considerably more than the mileage from Jones Landing to Plymouth, where it should have delivered the cotton on the wharf which the record states the Atlantic Coast Line had at Plymouth. The law will not tolerate such doubling of charges against the shipper.
On the facts in evidence the judge was in error in directing a nonsuit against the plaintiff, who seeks to recover the overcharge against him. The plaintiff also joins a charge for the penalty in exacting the overcharge. This penalty is prescribed by statute to prevent imposition on shippers and consignees who have to pay the charges of carriers before they can get their goods, as the plaintiff had to do on this occasion. Tilley v. R. R.,172 N.C. 363. We do not, however, pass upon the right of the plaintiff to recover the penalty, but leave that matter open until the facts are developed at the trial on the merits.
The judgment of nonsuit is
Reversed.