## W. S. Sparr, trading as Sparr Fruit Company, Appellee, v. Southern Pacific Company, Appellant.

## Gen. No. 25,637.

1. CARRIERS, § 66*—*when goods may be diverted in transit.* At common law and under the Interstate Commerce Act, a consignee, consignor or owner of a shipment, has a right during the transit thereof to divert it to a new destination, and upon receipt of an order to that effect, the carrier is obligated to carry the shipment to the diverted destination.

2. CARRIERS, § 188*—*what is effect of diversion in transit as to liability of initial carrier.* Where the initial and connecting carriers are parties to a transcontinental tariff which provides for a right of diversion to a new destination and the shipment is moved under such tariff, the original contract of shipment is not terminated by the exercise of such right by the shipper, and the initial carrier remains liable to final destination, even though the order for the diversion is given to the connecting carrier.

3. CARRIERS, § 141*—*when instruction as to injury to goods is not erroneous.* The phrase "in good merchantable shipping condition," used in an instruction, is not erroneous where the jury are informed by the evidence or the instruction what is meant by the phrase.

4. CARRIERS, § 123*—*when carrier is liable for improper ventilation.* Where goods are shipped under "standard ventilation" and instructions of the shipper with reference to such ventilation are not carried out, the carrier is liable for damages resulting from such failure regardless of whether or not it was in the exercise of due care in handling the ventilation appliances, since its obligation as to "standard ventilation" is a contractual one and its liability is not based on a theory of negligence.

5. CARRIERS, § 138*—*what evidence is admissible to show injury to goods.* Evidence of the examination of 13 boxes of different brands of oranges out of a total of 396 shipped is admissible to show the condition of the balance of the car where a thorough inspection of the entire car is impracticable.

6. CARRIERS, § 138*—*when evidence of market value is admissible in action for injury to goods.* Evidence as to the market value of fruit at destination, without making any allowance for natural deterioration during the course of transportation, is admissible where it has been shown that but for the failure of the

*See Illinois Notes Digest, Vols. XI to XV and Cumulative Quarterly, same topic and section number.

carrier to comply with standard ventilation instructions given by the shipper the fruit would have arrived in the good marketable condition in which it was delivered.

Appeal from the County Court of Cook county; the Hon. J. J. COOKE, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1919. Affirmed. Opinion filed November 30, 1920.

JOHN A. SHEEAN, for appellant.

CHARLES A. BUTLER, for appellee.

MR. JUSTICE MATCHETT delivered the opinion of the court.

Plaintiff sued in assumpsit alleging that defendant, a common carrier, had agreed to safely and securely carry for plaintiff 396 boxes of oranges, delivered by plaintiff to it at Fillmore, California, to be carried to Chicago, Illinois; an additional count charged that defendant was negligent. The defendant filed a plea of the general issue, with notice that it would rely on the bill of lading, federal laws, etc. The cause was tried before a jury, which returned a verdict for plaintiff in the sum of $222.69, on which the court entered judgment, from which defendant appeals.

Upon the trial the plaintiff proved delivery of the oranges in good condition at Fillmore, California, March 10, 1914; that the bill of lading acknowledged receipt of the same in "apparent good order except as noted, contents and condition of contents of packages, unknown," "which said company agrees to carry to its usual place of delivery at said destination if on its road, otherwise to deliver to another carrier on the route to said destination." There was also noted on the bill of lading that the fruit was consigned to the Pacific Coast Fruit Auction Company, Kansas City, Missouri, and that it was to move under "standard ventilation."

It appeared that the car left Fillmore, California,

at 1 p. m., March 10, 1914, and arrived in Chicago, Illinois, at 7 a. m. March 21, 1914; that the consignees were informed of its arrival on the same day; that the purchaser began unloading the car on March 23, 1914; that the car arrived at Kansas City at 11:25, March 17, 1914; that the consignee there was notified thereof at 3 p. m. of the same day, and on the next day at 6 p. m. March 18, the consignee ordered the Rock Island Company, on whose tracks the car stood, to forward the same to Chicago.

It was stipulated by the parties that the shipment moved between the point of origin and Chicago on the through rate provided by the transcontinental eastbound tariff, No. 3 k, in effect at the time the shipment moved, and which provided that the shipments made thereunder should be subject to the charges and privileges provided for by tariffs on the individual lines of the parties thereto, and to the further fact that the different lines involved in the particular transit under consideration were parties to such tariff, and that the Chicago, Rock Island & Pacific Railway Company tariff applicable to the shipment provided for reconsignment of carload shipments of the kind in question via lines over which it, in fact, moved, and that the Sparr Fruit Company's portion of the through rate to ultimate destination on the shipment in question was less than its proportion of the rate to Kansas City would have been, had the shipment terminated there.

The Chicago, Rock Island & Pacific tariff filed with the Interstate Commerce Commission, and duly published, was in part as follows:

"A.    Reconsigning will be permitted on carload shipments of fruits   *   *   *   and all Pacific Coast traffic, except as provided in section B, at through published rate, without reconsigning charge; and, provided there is a published through rate via any route from point of origin through point of diversion

or reconsignment to final destination, without back or out-of-line haul charge, notwithstanding back or out-of-line haul may be necessary, plus any demurrage and terminal charges at original or subsequent destination.''

The notation on the original bill of lading that the car should be ventilated through side doors for 30 minutes at all diversion terminals was canceled by wire upon order of the shipper at El Paso, Texas, where the car arrived March 14, 1914, and the instructions were there changed to read ''standard ventilation'' which contemplates keeping the ventilation appliances open, while the outside temperature is above 32 degrees, and keeping them closed during the time the outside temperature is below 32 degrees.

No evidence was offered to support the allegations of negligence contained in the second count of the declaration that the shipment was not transported within a reasonable time.

The plaintiff proved that the fruit was in good condition when delivered into the car at Fillmore, and was in a damaged and deteriorated condition upon its arrival at destination. Defendant offered and the court received evidence tending to show due care of the shipment during the period of transportation. Evidence was offered tending to show that refrigeration was superior to ventilation as a method of preventing deterioration during transit, and plaintiff offered, and the court received, evidence of the market value of the fruit at its point of origin, and its market value in the damaged condition in which it was received at its destination

The principal contention of appellant is that the court erred in submitting the case to the jury on the theory that the defendant as initial carrier was liable beyond the point named in the original bill of lading, and in receiving evidence against the defendant of damages sustained at the destination to which it was

reconsigned, and in instructing the jury at the request of the plaintiff:

"The court instructs the jury that a consignee, consignor or owner of a shipment has a right during the transit thereof to divert said shipment to a new destination, and that upon receipt of any order for said diversion by the said common carrier, the said common carrier is obligated to carry said shipment to the diverted destination."

The shipper had such right at common law, and it has been expressly held in *Gulf, C. & S. F. Ry. Co. v. Texas Packing Co.*, 244 U. S. 31, that the shipper has such right under the Interstate Commerce Act and decisions of the federal court construing the same. In that case poultry was shipped from Temple, Texas, to St. Louis, Missouri, under a bill of lading similar to the one in this case. While the poultry was in transit, and when the cars were on a sidetrack in St. Louis of the consignee, it was sold to a party in Chicago, and the shipper asked the initial carrier to divert the cars to Chicago. The agent of the initial carrier then telegraphed its representative in St. Louis to divert the cars, as requested. No new bills of lading were issued. The court there said:

"It is fairly inferable from the evidence that the bills of lading　*　*　*　were continued in force by the action of the parties, simply changing the place of destination, and remained binding contracts when the Santa Fe Company accepted the diversion of the shipment from St. Louis to Chicago."

It is insisted that the instant case is distinguishable from that one by the fact that the order for the diversion of the car here was given to the connecting carrier, that is, the Rock Island Company, rather than to the initial carrier, the Southern Pacific Company. And we are cited to a number of cases, *Deatwyler v. Oregon Ry. & Nav. Co.*, 176 Ill. App. 597; *Fish v. Pere Marquette R. Co.*, 169 Ill. App. 629; *Crutchfield, Woolfolk & Clore v. Atlantic Coast Line R. Co.*,

214 Ill. App. 664, which it is claimed sustain the contention of appellant.

The decisions of the federal courts are, of course, controlling, and, at any rate, we think there are material facts in this case which distinguish it from those cited. All the carriers involved here were parties to the transcontinental tariff filed with the Interstate Commerce Commission, under which the shipment moved, and this tariff provided for a through rate to Chicago on shipments of this character, with the right of diversion. In other words, at the time the contract of shipment was entered into it was within the contemplation of all the parties that such a diversion might be made at the option of the shipper. Obviously the notice of that diversion by the shipper would necessarily ultimately be given to the carrier party having the possession of the goods, and that the shipper saw fit to give the order directly to such party in possession rather than through the initial carrier would not, we think, be material.

The original contract was not in any way terminated by this exercise of an option of the shipper, which was granted by stipulations which must be considered as of the very terms of the contract.

We think there was no error either in submitting the case on the theory that the initial carrier was liable to destination or in receiving evidence on that theory or in instructing the jury to that effect. *Gulf, C. & S. F. Ry. Co. v. Texas Packing Co., supra; Gamble-Robinson Commission Co. v. Union Pac. R. Co.*, 262 Ill. 406.

It is next contended that the court erred in giving the following instruction:

"The court instructs the jury that in the event you find the goods in question were when delivered to the said defendant at point of origin of said shipment in good merchantable shipping condition, and when delivered by the delivering carrier thereof, at the des-

tination of said shipment, were not in good marketable condition, then, and in that event, as a matter of law, the negligence of said defendant and the carriers engaged in said transit is presumed therefrom, and the burden is thereupon on the said defendant to rebut said presumption.''

A similar instruction it is argued has been held erroneous by this court in *Crutchfield, Woolfolk & Clore v. Atlantic Coast Line R. Co., supra.* In that case the language used was ''in good sound merchantable *or shipping condition,*'' and the court said that neither by the instruction nor the evidence was the jury informed as to what was meant by the phrase ''good shipping condition.'' The evidence which was apparently absent in that case was in this case submitted to the jury, and we do not think the instruction was erroneous as applied to the facts of this case.

Complaint is also made that the court instructed the jury:

''That in the event you find from all the evidence in this case the said goods in question were shipped under standard ventilation, and that standard ventilation means that the hatch covers of the car must be kept open and the plugs out when the outside temperature is above 32 degrees above zero and closed and in, respectively, when below 32 degrees above zero; and in the event that you further find from all the evidence in this case that the said instructions, if any, of the said shipper, with reference to the said ventilation, were not carried out by the carriers in said transit, and that damage resulted to the contents of said car by reason thereof, then, and in that event, the defendant is liable herein for such damage.''

Appellant says this instruction is objectionable because it carries the implication that if the carriers did not close or open the ventilation appliances at the very moment the outside temperature fell below or rose above freezing, they were responsible for any damages resulting from such failure, regardless of the

question as to whether or not they were in the exercise of due care in handling the appliances under all the circumstances of the case. And in this connection appellant also complains that its requested instruction No. 1 was refused to the effect that the standard ventilation requirements, under which the shipments in question moved, should not be construed as meaning that the carriers ''shall necessarily be required to close the vents immediately upon the temperature falling below the freezing point, and to open them immediately upon the temperature rising above freezing point, but these requirements will be considered by you as placing upon the carriers the duty only of exercising a reasonable degree of care in manipulating said vents, and the duty of complying with such ventilation requirements only in a manner as nearly as practicable consistent with the railroad operation of fruit trains.'' We think the court did not err in these respects. Defendant's obligation as to ventilation was a voluntary, contract obligation on its part. Its liability, if any, in this respect was not based on the theory of negligence.

Appellant further contends that the trial court erred in admitting the testimony of one Battistini, who said that he had examined 13 boxes of the different brands of oranges out of a total of 396 boxes shipped, and from such examination was able to tell what the condition of the balance of the load was. No authorities are cited which would indicate that the admission of this sort of testimony was, under the circumstances, erroneous. It is apparent that a thorough inspection of the entire car was impracticable. Similar testimony has been held admissible in this and other States. *Perkett v. Manistee & N. E. R. Co.*, 207 Mich. 32, 173 N. W. 359; *Gallagher v. Grand Trunk Western Ry. Co.*, 207 Ill. App. 316.

Nor do we think the further contention that the court erred in admitting testimony as to the market

value of the fruit at destination, without making any allowance for the natural deterioration in the fruit, during the course of its transportation, can be sustained. There was evidence tending to show that if the vents and plugs had been manipulated in accordance with the standard ventilation directions given, the fruit would have arrived in the good merchantable condition in which it was delivered. The jury had a right to so find. Under a similar bill of lading, evidence of this sort was received by the trial court, and the trial court was sustained by the reviewing court. *Gulf, C. & S. F. Ry. Co. v. Texas Packing Co., supra.*

Other alleged errors are argued, which we have considered, but think there is no. error in this case which would require its reversal. The judgment will therefore be affirmed.

*Affirmed.*

BARNES, P. J., and GRIDLEY, J., concur.