CHICAGO—FIRST DISTRICT—APRIL, 1925.    541

Bruner v. Grand Trunk Western Railway Co., 236 Ill. App. 541.

## Sam Bruner, Appellee, v. Grand Trunk Western Railway Company, Appellant.

### Gen. No. 29,379.

**1.** MUNICIPAL COURT—*judgment against one of several defendants in fourth-class case against negligent carriers.* An action of the fourth class in municipal court against carriers for damage to apples in the course of transportation being, in its essence, to recover damages for negligence so that it may be considered as being in tort, and no written pleadings being required so that the same rules govern as in justices courts, a judgment may be rendered against one of the joint defendants and not against the other.

**2.** CARRIERS—*liability of initial freight carrier for damages to interstate freight.* Under the Cummins Amendment to the Interstate Commerce Act a shipment of apples was continuous so as to render the initial carrier liable during the entire transportation where consignment was first made from a point in Michigan to Chicago and, while the car was on defendant's team tracks there, it was recognized by order given by the consignee to defendant to the same consignee to a point in Wisconsin without a new bill of lading.

**3.** APPEAL AND ERROR—*estoppel to assign error in judgment rendered on motion of complaining party.* Cross errors may not be assigned and sustained on appeal on the ground that the judgment was for too small a sum where the record recites that judgment was rendered on motion of plaintiff and no objection was made to its entry.

Appeal by defendant from the Municipal Court of Chicago; the Hon. FRANCIS BORRELLI, Judge, presiding. Heard in the third division of this court for the first district at the March term, 1924. Affirmed. Opinion filed April 29, 1925. Rehearing denied May 13, 1925.

KRETZINGER, KRETZINGER & SMITH, for appellant.

H. C. LUST and MADDOCK, JAFFE & GREEN, for appellee.

MR. JUSTICE TAYLOR delivered the opinion of the court.

On October 31, 1921, the plaintiff, S'am Bruner, brought suit, in a fourth-class case, in the municipal court of Chicago against the defendant, Grand Trunk Western Railway Company, and against the St. Paul & Sault Ste. Marie Railway Company (hereinafter called the Soo Line) for damages to a shipment of apples from Gooding, Michigan. There was a trial before the court, without a jury, and finding and judgment for the plaintiff and against the defendant, Grand Trunk Western Railway Company, in the sum of $480.85. This appeal is therefrom.

At the trial but two witnesses were called: the plaintiff, and one Susman. No evidence was introduced by the defendants. At the close of the evidence, on motion of the defendant, the Soo Line, there was a finding and judgment in its favor.

The evidence of the plaintiff is substantially as follows: He lived in Oshkosh, Wisconsin, and was in the apple business. He was in Chicago on November 16, 1920, and inspected a car of bulk apples, car "N. Y. D. X. 14514," on the Grand Trunk team tracks at 14th street. He opened the car, "dug" into the apples and found them in perfect condition. He bought the car from the Northern Produce Company, and paid down $150, paying the balance when the car arrived at Oshkosh. The bill of lading he surrendered to the Soo Line. No new bill of lading was issued. He went to the local agent of the Grand Trunk and had the car reconsigned to Oshkosh, Wisconsin. The reconsignment order was as follows:

"Division Order Car N. Y. D. X.—14514, Chicago, Nov. 16th, 1920. Local Freight Agent, Grand Trunk Railway. From Michigan, Now on team track. Please reconsign and forward car apples to order Northern Fruit & Produce Company, notify Sam Bruner, Oshkosh, Wisconsin, via Soo Line. Protect through rate of  *  *  *  charges follow."

It was signed, "Northern Fruit & Produce Company." The car arrived at Oshkosh on November

22. He took possession of it on November 23, and started on that day to unload it, and finished on the next day. The apples were found to be wet, and a large quantity of them frozen. The car was a ventilated box car, and contained 500 bushels. More than half the car, 300 to 350 bushels, were worthless. The rest he loaded and took to his store. On November 23, the market value of bulk apples in good condition at Oshkosh was $2.75 and $3.00 a bushel. The evidence of Susman, who was with the plaintiff when the latter inspected the car in Chicago, corroborated that of the plaintiff as to the condition of the apples in Chicago, and at Oshkosh, and as to the quantity that was spoiled, and as to the market price.

There was offered in evidence what is entitled, "Reconsigning Rules of the Interstate Commerce Commission." Number 33 recites that, "For the purpose of applying these rules on fruits and vegetables, the term 'reconsignment' is understood to mean: A: A change in consignee, a change in route or a change in destination, made while a shipment is in transit to its billed destination, also if made after arrival at the billed destination, provided this latter change involves a movement beyond the billed destination."

The freight bill, which was offered in evidence, showed that the Northern Fruit & Produce Company reconsigned the car and that it was consigned to the Northern Fruit & Produce Company at Oshkosh. It also shows that the plaintiff paid all the freight charges from Gooding, where the shipment started from, to Oshkosh.

The bill of lading was not put in evidence. The plaintiff served notice on the defendant to produce it, but the defendant failed to do so. An effort was made at the trial to get the defendant to admit in evidence a copy of it, but that was refused.

The defendant's affidavit of merits alleges that on November 9, 1920, at Gooding, Michigan, it issued to

544    APPELLATE COURTS OF ILLINOIS.

Bruner v. Grand Trunk Western Railway Co., 236 Ill. App. 541.

I. Kramer its bill of lading for the transportation of one car of apples consigned to Northern Fruit & Produce Company, Chicago; that defendant transported said shipment safely and with due care, without delay or damage from Gooding to Chicago and after said car had arrived at Chicago and said transportation under said bill of lading ended, the consignee directed this defendant to forward said car to Oshkosh, Wisconsin; that in obedience to said instruction defendant turned said car over to the Soo Line, which company carried with due and proper care said shipment from Chicago to Oshkosh.

At the outset there is a procedural question. It is claimed for the defendant that the suit was in contract and not in tort, and, therefore, a judgment in favor of one defendant, the Soo Line, and against the other defendant is erroneous. But this is a case of the fourth class, and as in its essence it is to recover damages for negligence and so may be considered in tort, and as no written pleadings are required, and the same rule applies as governs actions before justices of the peace, the objection is not tenable. *Edgerton v. Chicago, R. I. & P. Ry. Co.*, 240 Ill. 311.

The chief question in the case is whether under the Cummins Amendment to the Interstate Commerce Act the defendant was the initial carrier of a shipment from Gooding, Michigan to Oshkosh, Wisconsin. The evidence shows that the defendant carried the shipment to Chicago; that while it was on its team tracks its contents were inspected by the plaintiff; that the plaintiff bought the shipment, that it was diverted and reconsigned to Oshkosh; that the order of reconsignment was given to the defendant, the consignee remaining the same; that no new bill of lading was issued, and that it was then carried on and delivered at Oshkosh. There is no dispute as to the actual facts of the case. It is not claimed

by the defendant that a new bill of lading was issued after the shipment arrived in Chicago. How then is it reasonable to hold that the shipment was not continuous? The shipment was originally sent to the Northern Fruit & Produce Company at Chicago, and when reconsigned was sent to the order of the same company, the order reciting, in addition, notify Sam Bruner, Oshkosh, Wisconsin. By Rule 33, *supra,* it was entirely proper "after arrival at the billed destination" to change its destination to Oshkosh. The case of *Gulf, C. & S. F. Ry. Co. v. Texas Packing Co.,* 244 U. S. 31, was not dissimilar to the instant case, and there it was held that where bills of lading are not changed by the issuing carrier and there is a reconsignment after arrival at the original destination, the action of the carrier in acting upon reconsignment instructions and forwarding the shipment on the original bill of lading has the effect of continuing in force the original bill of lading, and, if there is any damage to the shipment while in the possession of the connecting carrier, the issuing carrier is liable. In the instant case, the reconsignment instructions were given to and accepted by the defendant. In the *Texas Packing Co.* case the court said: "It is fairly inferable from the evidence that the bills of lading originally issued were continued in force by action of the parties, simply changing the place of destination, and remained binding contracts when the Santa Fe Company (the initial carrier) accepted the diversion of the shipment from St. Louis to Chicago."

Of course, there are cases where the evidence shows that the transit had actually terminated at the original billed destination; where there were no rules nor tariffs permitting reconsignment; and where the original bill of lading was not continued in force, but this does not belong to any of the classes so described. The case of *Sparr v. Southern Pac. Co.,* 220 Ill. App.

180, is quite similar to the instant case. There a shipment of oranges over the Southern Pacific was billed to Kansas City. After it arrived there the consignee ordered the Rock Island Company, a connecting carrier, to forward it to Chicago. That was done under a tariff permitting such a reconsignment. The shipment was delivered in a damaged condition to a different consignee in Chicago, and suit was brought against the Southern Pacific as the initial carrier. It defended on the ground that its liability had terminated at Kansas City. This court, relying on the *Texas Packing Co.* case, *supra,* said: "We think there was no error either in submitting the case on the theory that the initial carrier was liable to destination or in receiving evidence on that theory or in instructing the jury to that effect."

In the instant case, when the Soo Line undertook to carry the shipment in compliance with the order of reconsignment, it was merely acting as agent and carrying out the responsibility and, therefore, obligation assumed by its principal, the defendant. *Starks Co. v. Michigan Cent. R. Co.,* 207 Ill. App. 333; *Lewellyn v. Pere Marquette R. Co.,* 185 Ill. App. 171; *Chesney v. Union Pac. Ry. Co.,* 209 Ill. App. 495; *Gamble-Robinson Commission Co. v. Union Pac. R. Co.,* 262 Ill. 400. In the latter case the court held that a reconsignment and reshipping of the cars, without a modification of the bill of lading, and at the through freight rates, was merely a "modification of the original contract of carriage as evidenced by the original bill of lading," and said: "Under the decisions of the United States Supreme Court it seems clear defendant's liability did not cease until delivery of the property at its final destination." *Trott v. Baltimore & O. R. Co.,* 192 Ill. App. 239. In this case the court referred to *Ruddell v. Baltimore & O. R. Co.,* 175 Ill. App. 456, and said:

"In the *Ruddell* case the diversion order was given and accepted before the goods had arrived at the

original destination, while in the present case such order was given and accepted after the goods had arrived at the destination. We do not think this makes any material difference. In each case the goods were still in the possession of the connecting carrier. The owner or consignee of goods has the right to divert or change the destination of them at any time while they remain in the possession of the carrier.'' *Baltimore & O. R. Co. v. Montgomery & Co.*, 19 Ga. App. 29, 90 S. E. 740; *Chesney v. Union Pac. Ry. Co.*, 209 Ill. App. 494.

Section 20 of the Interstate Commerce Act (Fed. St. Ann., 2nd Ed., page 506, vol. 4) provides ''that any common carrier * * * receiving property for transportation from a point in one state * * * to a point in another state * * * shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, damage or injury to such property caused by it or by any common carrier * * * to which such property may be delivered or over whose line or lines such property may pass within the United States * * * when transported on a through bill of lading.'' In *Atlantic Coast Line R. Co. v. Riverside Mills*, 219 U. S. 186, the court said:

''The receiving carrier is, as principal, liable not only for its own negligence, but for that of any agency it may use, although, as between themselves, the company actually causing the loss may be primarily liable.''

In the instant case there was no delivery in Chicago. The car of apples was still in the possession of the defendant. Although it had reached its original destination, the car was still undelivered. The contract was still executory and could be modified. And the evidence shows it was, by the reconsignment instructions that were given to the defendant, the initial carrier. The plaintiff said he paid the draft attached to the bill of lading and surrendered the bill

548    Appellate Courts of Illinois.

Bruner v. Grand Trunk Western Railway Co., 236 Ill. App. 541.

of lading to the Soo Line at Oshkosh, and that no new bill of lading had been issued. We see no escape from the conclusion that the defendant was the initial carrier and liable for any negligence occurring prior to the delivery of the car at Oshkosh.

It is contended for the defendant that the record shows that at the close of the evidence a judgment was entered in favor of the defendant, the Soo Line, and against it, the Grand Trunk Western Railroad Company, and that that is error. The common-law record only shows that the court found the issues against the defendant, the Grand Trunk Western Railroad Company and entered judgment in favor of the plaintiff against that company in the sum of $480.85. Only in the bill of exceptions is there any reference to a judgment in favor of the codefendant, the Soo Line.

The plaintiff might have sued the Grand Trunk either in contract or in tort. *Chudnovski v. Eckles,* 232 Ill. 312. The form of its statement of claim was in contract, but this was a fourth-class action in the municipal court where the Supreme Court has held "the party suing need not even name his action, or if misnamed, that will not affect his rights, if upon hearing the evidence he appears to be entitled to recover and the court has jurisdiction of the defendant and of the subject-matter of the litigation." *Edgerton v. Chicago, R. I. & P. Ry. Co.,* 240 Ill. 311. Upon the evidence in this case, the court could consider the plaintiff's action as one in tort and enter judgment in his favor against the Grand Trunk, and against him and in favor of the Soo Line. Assuming that was done, as the Grand Trunk now claims, it therefore may not complain about the form of the judgment.

Cross errors were assigned by the plaintiff. It is claimed that the damages proved amounted to $825, whereas the court only found the amount to be $480.85. But the record recites that on motion of the

plaintiff there was a finding in favor of the plaintiff and against the defendant in the sum of $480.85. The judgment having been entered upon plaintiff's own motion, and no objection having been made to its entry, no error can be alleged and sustained on appeal. *Boston Store of Chicago v. Hartford Accident & Indemnity Co.*, 227 Ill. App. 192; *Griswold v. Smith*, 221 Ill. 341; *Smith v. Kimball*, 128 Ill. 583.

Finding no error in the record the judgment will be affirmed.

*Affirmed.*

O'CONNOR, P. J., and THOMSON, J., concur.